**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 7 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN D. CRAGG, SR.,

      Plaintiff-Appellant,

v.

CITY OF OSAWATOMIE, KANSAS,
a/k/a City of Osawatomie; JAMES
RICKERSON, Acting City Manager, in
his official and individual capacity,

      Defendants-Appellees.

No. 96-3390

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 95-2492-JWL)**

---

Robert L. Bezek Jr., Bezek, Lowry & Hendix, Ottawa, Kansas, for Plaintiff-Appellant.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, L.L.P., Overland Park, Kansas, for Defendants-Appellees.

Before **PORFILIO**, Circuit Judge, **EBEL**, Circuit Judge, and **BRETT**, District Judge.[*]

---

**PORFILIO**, Circuit Judge.

---

[*]The Honorable Thomas R. Brett, District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

Plaintiff John Cragg brought this 42 U.S.C. § 1983 action against his former employer, the City of Osawatomie, Kansas, alleging he was terminated in violation of his rights under the First and Fourteenth Amendments.[1]  In the months prior to his termination, Mr. Cragg participated in city elections by posting a sign in his front yard and placing an advertisement on a local cable access channel.  Mr. Cragg alleges he was discharged in retaliation for this political activity.  He also alleges his termination violated the terms of his employment contract with the City.  The district court granted summary judgment for the defendants on both issues, and Mr. Cragg appeals.  We affirm in part and reverse in part.

**Background**

Mr. Cragg served as the Osawatomie Police Chief for over twenty years.  Immediately before a city election and six months prior to Mr. Cragg's termination, a city council member approached then City Manager Larry Buchanan, expressed concern that some of the candidates for city council might be convicted felons, and asked whether felons could hold public office.  City Manager Buchanan then told Chief Cragg to investigate both the legal issue and the criminal records of the candidates in question.

Chief Cragg asked the Kansas Bureau of Investigation (KBI) to check the candidates' names against criminal conviction records contained in the KBI computer

---

[1]The plaintiff also named Osawatomie City Manager James Rickerson as a defendant in this action.

system.  KBI confirmed three of the candidates were convicted felons. After consulting with a number of attorneys, Chief Cragg also learned a convicted felon *could* hold public office, provided the felon is not on probation or serving a sentence.  Chief Cragg conveyed this information to City Manager Buchanan.  Later that evening, however, Mr. Cragg placed a television ad on a local cable access channel, which stated, "Be careful who you vote for, three of the candidates for city office are convicted felons."  The advertisement was signed by Mr. John D. Cragg, Sr., and did not mention Mr. Cragg's position as Chief of Police.  The next day, Councilman Goodeyon and candidates Benner and Hoskins asked City Manager Buchanan to fire Mr. Cragg for engaging in this political activity.  Mr. Buchanan refused to do so.

Six months later, Osawatomie held an election to recall two sitting council members.  Days before the election, Mr. Cragg displayed a sign on his front lawn which read "Vote no on recall."  Immediately after Mr. Cragg posted this sign, Councilmen Benner and Goodeyon asked Mr. Buchanan to fire Mr. Cragg.  Once again, Mr. Buchanan refused.

On September 14, 1995, two weeks after the recall election, the city council bought out the remainder of City Manager Buchanan's employment contract and appointed James Rickerson as City Manager.  That night, Mr. Rickerson decided to fire four individuals, including Mr. Cragg.  We will supplement this basic outline of events as necessary to explain our conclusions.

We note at the outset the complaint raised five separate issues for relief, only two of which are presented here.  First, Mr. Craig contends the district court failed to properly apply the First Amendment balancing test required by **Pickering v. Board of Educ.**, 391 U.S. 563 (1968).  Second, Mr. Cragg asserts the district court erred by improperly interpreting Kansas law in denying plaintiff's contract claim.  We will restrict our review to these two claims.

**First Amendment Claim**

On an appeal from summary judgment, we must affirm a district court's order if no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

In cases alleging retaliatory discharge of a public employee in violation of the First Amendment, we analyze the plaintiff's claim using a four-step analysis.  First, we determine whether the public employee's speech touches on a matter of public concern. **Connick v. Myers**, 461 U.S. 138, 146-47 (1983).  Second, if the employee spoke as a citizen on a matter of public concern, we must weigh "the interests of the [employee], as a citizen, in commenting upon matters of public concern" against the State's interest "as an employer, in promoting the efficiency of the public services it performs through its employees." **Pickering**, 391 U.S. at 568.  Third, if the employee's speech interests outweigh the City's efficiency interests, the plaintiff must prove the protected speech was a motivating factor in his or her termination.  **Mt. Healthy City Sch. Dist. v. Doyle**, 429

- 4 -

U.S. 274, 287 (1977). Finally, if the plaintiff makes the required showing, the burden then shifts to the defendant, who must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity. *Id.* The first two steps must be resolved by the court; the last two steps are ordinarily questions for the trier of fact. *Melton v. City of Oklahoma City*, 879 F.2d 706, 713 (10th Cir. 1989); *Wulf v. City of Wichita*, 883 F.2d 842, 856-57 (10th Cir. 1989).

The only issue before us on appeal is whether Mr. Cragg's speech interests outweigh the City's efficiency interests under the *Pickering* balancing test. The *Pickering* analysis requires us to ask whether the City, acting as a public employer, has an efficiency interest which would justify it in restricting the particular speech at issue. *Compare Pickering*, 391 U.S. at 569-70 (because a teacher's employment did not require him to come into contact with the Board on a daily basis, a School Board could not justify restricting the teacher's criticism of the Board's allocation of funds on the ground that the teacher's loyalty to the Board was essential to an efficient functioning of the school), *with Connick*, 461 U.S. at 153 (an assistant district attorney's intra-office circulation of a survey criticizing her immediate supervisors endangered the efficient functioning of the office and justified the state's restriction of her speech). That the City *could* have other grounds for discharging Mr. Cragg is a question reserved for the trier of fact and is irrelevant to our *Pickering* analysis. *See Melton,* 879 F.2d at 713; *Wulf,* 883 F.2d at 856-57. The City bears the burden of demonstrating that an infringement of Mr. Cragg's

speech was necessary to ensure the efficient delivery of the public services it provides. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). We note "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." *Connick*, 461 U.S. at 152. "Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." *Rankin*, 483 U.S. at 384.

Mr. Cragg's conduct clearly lies at the core of protected speech. By placing an ad on cable television and posting a sign in his front yard, Mr. Cragg engaged in the sort of political speech which forms the core of our democratic system. We would be hard pressed to classify the election of a city council member as anything other than a matter of great public concern. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) (The First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."). Mr. Cragg's speech interest therefore weighs heavily in the *Pickering* balance.

The City contends Mr. Cragg's conduct created disruption within the City and urges this court to give credence to its "reasonable predictions of disruption." *See Moore v. City of Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995). We will defer to a public employer's reasonable predictions of disruption, but those predictions must be supported by the presentation of specific evidence. The City cannot satisfy its burden by making

"purely speculative allegations." *See Moore*, 57 F.3d at 934 ("The government cannot rely on purely speculative allegations that certain statements caused or will cause disruption to justify the regulation of employee speech."); *Melton*, 879 F.2d at 715-16 ("Although we recognize the *potential* impact that a breach of confidentiality might have on the [police] department, we must point out that the government must introduce evidence of an actual disruption of its services resulting from the speech at issue." (emphasis in original)); *Wulf*, 883 F.2d at 862 ("'[P]urely speculative allegations' are insufficient [to satisfy the public employer's burden]. . . . [T]here is simply insufficient evidence that the [employee's speech] *itself* interfered with effective functioning of the police department." (emphasis in original)).

Our review of the record reveals no evidence of disruption caused by Mr. Cragg's political speech. The City itself admits "it may be accurate that the record does not contain evidence of disruption within the police department." Appellee Br. at 9. The City urges us to take note of numerous incidents in which Mr. Cragg allegedly engaged in conduct unbecoming an officer or abused his position. Although these incidents may well prove relevant to the question of whether the City would have terminated Mr. Cragg irrespective of his political speech, that issue, as we have said, is for the trier of fact and is irrelevant to our inquiry here. The City therefore has failed to demonstrate by specific evidence that Mr. Cragg's political speech contributed to any disruption within the city administration or its police department, or jeopardized the efficient provision of law

enforcement services within the City of Osawatomie.  Because the City has failed to identify any efficiency interest which would justify a restriction of Mr. Cragg's speech interest, it is not entitled to judgment as a matter of law, and the district court order as to Mr. Cragg's First Amendment claims must be reversed.

## Breach of Contract Claim

In March 1995, Mr. Cragg had a dispute with Gordon Shrader, a former City Manager who owned a local insurance agency.  During the dispute, Mr. Shrader threatened Mr. Cragg's continued employment.  Mr. Cragg expressed concern over this incident to City Manager Larry Buchanan, and Mr. Buchanan, in response, provided Mr. Cragg with a letter, reading in its entirety:

> The intent of this letter is to give you a reasonable quarantee [sic] that I whish [sic] you to stay employeed [sic] with the City of Osawatomie.  I realize with the current political situation, you have been threatened and intimidated about your continued employment with the city.

> Kansas remains a work at will state under state statue [sic], unless a contract is in place.  A city manager still has the right with a contract in place to discharge any employee.  If such action occurs without cause or due process, that employee is entitled to all pay and benefits under the terms of the contract.

> It is my intent to employ John Cragg as Chief of Police for Osawatomie, Kansas from March 31, 1995 until March 31, 1998.

> All City rules and regulations that pertain to any employee shall also pertain to Mr. Cragg.

Mr. Buchanan described this letter as a letter of intent and a contract of employment.

Plaintiff asserts this letter formed a contract of employment which the defendants breached in discharging him. Although the district court reviewed the claim in the context of a constitutionally-protected property interest, the issue was initially raised as a separate breach of contract claim in the complaint. (Apt. App. at 1, p.5). Nonetheless, either issue is resolved by determining whether the "letter of intent" constituted a binding contract between plaintiff and the City. The district court determined under the law of Kansas a city manager "lacks the authority to enter into a contract of employment for a specific term." In part, the court relied upon *Wiggins v. Housing Authority of Kansas City,* 916 P. 2d 718 (Kan. App. 1996). In this court, plaintiff argues the holding of *Wiggins* is unsupportive of the district court's conclusion and asks us to certify the issue to the Kansas Supreme Court.

There is a fundamental reason which persuades us to deny that request. As pointed out by defendants, the letter of intent has none of the attributes of a contract. Neither the employing entity (the City), nor the plaintiff is a party to the alleged agreement; there is no consideration stated; and the duties of employment are undefined. There is no offer or acceptance noted in the document, nor is there any evidence of the fundamental requirement of a meeting of the minds. *Union National Bank of Wichita v. F. C. Brundgardt*, 522 P.2d 371, 372 (Kan. 1974) (A binding contract requires a meeting of the minds by both parties on all essential terms, a modification of an existing agreement requires fresh consideration, and a unilateral contract lacking separate consideration will

- 9 -

not be enforced.).  In short, the document is merely a memorandum of Mr. Buchanan's unilateral personal intent to retain plaintiff's services as chief of police during the remainder of Mr. Buchanan's term of office as city manager.

**REVERSED** in part, **AFFIRMED** in part.