**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JANA BARKER,

      Plaintiff - Appellant,

  v.

CITY OF DEL CITY, a political
subdivision,

      Defendant - Appellee.

No. 99-6127

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-98-516-A)**

---

Stanley M. Ward (Maribob L. Lee, with him on the briefs), Norman, Oklahoma,
for appellant.

Andrew W. Lester (Susan B. Loving with him on the brief), Lester, Loving &
Davies, P.C., Edmond, Oklahoma, for appellee.

---

Before **BRORBY** , **ANDERSON** , and **LUCERO** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

Plaintiff Jana Barker appeals the grant of summary judgment to defendant, the City of Del City, Oklahoma, on her 42 U.S.C. § 1983 claim that the City terminated her employment in violation of her First Amendment rights to free speech and free association.  We affirm in part and reverse in part.

## BACKGROUND

In March 1996, the city manager of Del City, Stanley Greil, hired Ms. Barker as his administrative assistant.  In March 1997, there was a contentious municipal election in which two members of the City Council, including the mayor, were defeated, and four of the five City Council seats were filled by newcomers.  In May 1997, a month after the newly elected officials took office, Mr. Greil's employment ended. [1]  Reba Basinger became acting city manager until the City Council appointed Robert Palmateer to the position in October 1997.  Ms. Barker was Mr. Palmateer's administrative assistant until he terminated her employment on February 2, 1998.

The city manager is the highest non-elected position in the city and is responsible for implementing the City Council's policies.  The city manager's administrative assistant is the manager's "right hand" and "alter ego."

---

[1]As the district court observed, the parties "cannot agree whether he resigned or was terminated."  Order at 3 n.2, Appellant's App. Vol. II at 774.

Appellant's App. Vol. I at 125. She acts on the city manager's behalf at city council meetings and city, civic, and social functions; she works on confidential and sensitive matters; troubleshoots community problems; and must maintain good relationships with the council, other employees and the public. See id. at 125-127.

As the district court found, at the times relevant to this lawsuit, Del City "experienced turbulent political seas." Order at 4, Appellant's App. Vol. II at 775. The night of the March 1997 election, a recall effort began. Ms. Barker was not involved in the recall campaign. Dale Switzer, the only incumbent remaining in office following the election, had a "strained relationship" with the four new council members, Brian Linley, Linda Whitehead, Harry Nelson, and mayor Kim Lee.

The situation became more turbulent when, on May 14 and 15, 1997, Ms. Barker attended an Oklahoma Municipal League ("OML") conference with the four new council members, but not Dale Switzer. The following day, May 16, at a regularly scheduled City Council meeting, Mr. Switzer accused the other four council members of violating the Oklahoma Open Meeting Act by deciding, while they were attending the OML conference, to hire a different attorney for the City. A local newspaper reporter, Jeff Schultz, had previously accused the City Council of violating the Open Meeting Act by going into executive session without their

attorney. Several newspaper articles described the ongoing dispute between Mr. Switzer and the new council members.

After the May 16 City Council meeting, Mr. Schulz contacted Ms. Barker and asked to speak to her about the OML conference. Ms. Barker asked Ms. Basinger, the acting city manager, and Ted Pool, the city attorney, whether she should meet with Mr. Schulz and was told she "was free to talk to the press as long as [she] told the truth, and that [she] felt like it was in the good for Del City." Barker Dep. at 42, Appellant's App. Vol. I at 171. Accompanied by Mr. Palmateer, then the Director of Economic Development, and Jerry Steely, the Director of Human Resources, Ms. Barker met with Mr. Schultz. A subsequent newspaper article discussed Mr. Switzer's allegations that the other council members had violated the Open Meeting Act by meeting and making decisions at the OML conference, and included statements from Ms. Barker that supported Mr. Switzer's allegations.

Meanwhile, the recall petitions circulating during this time period sought to recall the mayor and the other three newly-elected council members. All four were retained in office following the January 1998 recall election. Approximately one month later, on February 2, 1998, Mr. Palmateer terminated Ms. Barker's employment. She brought this action alleging retaliatory discharge for her exercise of her First Amendment rights to free speech and association. Her free

speech claim alleges she was fired in retaliation for whistleblowing—i.e., her statements to Mr. Schultz describing a perceived violation of the Open Meeting Act by City Council members.  Her free association claim alleges she was terminated because of her continuing relationship with Mr. Greil, the former city manager who was fired or resigned when the new City Council members took office.  The City responds that she was terminated because of her job performance and "unfitness" for her position. The district court granted summary judgment to the City on both claims.

**DISCUSSION**

We review the grant of summary judgment de novo, using the same standard as did the district court.     See Jantzen v. Hawkins   , 188 F.3d 1247, 1251 (10th Cir. 1999).  In First Amendment cases, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression."   Horstkoetter v. Dep't of Public Safety    , 159 F.3d 1265, 1270 (10th Cir. 1998).  Accordingly, summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  We view the evidence in the light most favorable to the non-moving party.    See Jantzen , 188 F.3d at 1251.

## I.  Freedom of Association Claim

"Where a government employer takes adverse action on account of an employee's political association and/or political beliefs, we apply the test as developed in the   Elrod v. Burns  , 427 U.S. 347 (1976) (plurality opinion), and Branti v. Finkel  , 445 U.S. 507 (1980), line of cases."        Jantzen , 188 F.3d at 1251. Under that line of cases, public employees receive First Amendment protection "from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance."          Mason v. Oklahoma Turnpike Auth.  , 115 F.3d 1442, 1451 (10th Cir. 1997).  If the employer can demonstrate "the need for political loyalty of employees,"        Elrod , 427 U.S. at 367, then political patronage dismissals of such employees are permissible.

Thus, to defeat summary judgment on her association claim, Ms. Barker must "establish a genuine dispute of fact that (1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors behind [her] dismissal[]; and (2) [her] . . . employment position[] did not require political allegiance."        Jantzen , 188 F.3d at 1251.  The district court held that "the right of the City Council and its chosen manager, Palmateer, to demand [Ms. Barker's] loyalty and support for

- 6 -

its policies and decisions is beyond question." Order at 12, Appellant's App. Vol. II at 783. Having concluded that Ms. Barker's job required political allegiance, the court granted summary judgment to the City on her association claim.

The Supreme Court has stated that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518; see also Dickeson v. Quarberg, 844 F.2d 1435, 1441 (10th Cir. 1988). To make that determination, we analyze "the nature of the employee's duties and responsibilities." Id. at 1442; see also Jantzen, 188 F.3d at 1253. The City bears the burden of proving "whether political association was an appropriate requirement for the effective performance of the public office involved." Id.

While we have implicitly held that whether political association is such an appropriate requirement is a question of fact, see id., there is no dispute in this case as to the nature of Ms. Barker's duties, and the district court resolved the issue as a matter of law in the face of such undisputed facts. We agree that such a resolution is appropriate in this case, and affirm the district court's conclusion that political association and allegiance were appropriate requirements for the performance of Ms. Barker's job as administrative assistant to the city manager.

See McCloud v. Testa, 97 F.3d 1536, 1556 (6th Cir. 1996) ("[W]orkers analogous to a cabinet secretary to a chief executive, along with the confidential advisors and administrative assistants of such executives and cabinet secretaries, are not entitled to First Amendment protection."); Smith v. Sushka, 117 F.3d 965, 971 (6th Cir. 1997) (administrative assistant to county engineer); Savage v. Gorski, 850 F.2d 64, 68-69 (2d Cir. 1988) (confidential secretary to corrections official); see also Wilbur v. Mahan, 3 F.3d 214, 216 (7th Cir. 1993) (noting that the confidential character of positions such as personal secretary or personal assistant makes political affiliation an appropriate job requirement). Thus, the district correctly granted summary judgment to the City on Ms. Barker's claim that her First Amendment right to political association was violated when she was terminated for her association with Mr. Greil, the former city manager, who had left the City's employ on adversarial terms.

## II. Freedom of Speech Claim

"Where a government employer takes adverse action because of an employee's exercise of his or her right of free speech, we apply the balancing test from Pickering v. Board of Educ., 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983) ("Pickering/Connick test")." Jantzen, 188 F.3d at 1251. The Pickering/Connick test has four parts:

1.  Whether the speech in question involves a matter of public concern.

2.  If so, we must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace.

3.  Employee must show the speech was a substantial factor driving the challenged governmental action.

4.  If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech.

Id. at 1257.  The first two questions are ones of law for the court, while the latter two questions are ones of fact for the jury.      See Jantzen , 188 F.3d at 1257; Horstkoetter , 159 F.3d at 1271.

An initial question presented by this case is whether, and/or how, a Pickering /Connick analysis applies to an employee like Ms. Barker who is also a "policymaker" or political affiliation employee to whom the      Elrod /Branti line of cases applies.  The City appears to argue that a political affiliation employee can always be terminated, regardless of whether she would otherwise be entitled to the protections of the   Pickering /Connick balancing test for any particular exercise of free speech.  The Supreme Court has implicitly rejected the City's position. See O'Hare Truck Serv., Inc. v. City of Northlake    , 518 U.S. 712, 719 (1996) (noting that there will be cases "where specific instances of the employee's speech or expression, which require balancing in the      Pickering  context, are intermixed with a political affiliation requirement.  In those cases, the balancing

Pickering mandates will be inevitable."). Our circuit has similarly implicitly endorsed the idea that the two different analyses remain distinct and separate. See Jantzen, 188 F.3d at 1251 (noting that we address separately a political association claim and a free speech claim raised by the same employee).

We agree with the Seventh Circuit that, "[a]lthough an employee's status as a policymaker bears considerable attention when weighing the interests of the government, the policymaking employee exception does not apply and courts must apply Pickering balancing when the speech at issue does not implicate the employee's politics or substantive policy viewpoints." Bonds v. Milwaukee County, 207 F.3d 969, 979 (7th Cir. 2000); see also Lewis v. Cohen, 165 F.3d 154, 162 (2d Cir.) ("Although it is true that, consistent with the First Amendment, a policymaking employee may be discharged on the basis of political affiliation such as membership (or lack of membership) in a particular political party, that same employee may not be discharged on the basis of specific speech on matters of public concern unless the Pickering balancing test favors the government employer."), cert. denied, 120 S. Ct. 70 (1999); but see, Fazio v. City & County of San Francisco, 125 F.3d 1328, 1334 (9th Cir. 1997) ("Because we hold that [plaintiff's] position . . . was a policymaking one, we do not address [plaintiff's] claim that under the Pickering balancing test his interest in free speech outweighs the [employer's] interest in running an efficient office.").

Accordingly, in this case, a Pickering /Connick analysis could appropriately be applied to Ms. Barker's speech on a matter of public concern unrelated to her politics or substantive policy positions, even though she is also a policymaking employee to whom the Elrod /Branti line of cases applies. We turn, therefore, to whether the district court properly granted summary judgment to the City on Ms. Barker's free speech claim.

The City concedes that Ms. Barker's speech about claimed violations of the Open Meeting Act by members of the City Council is a matter of public concern. The next step of the Pickering /Connick test requires Ms. Barker to "show that [her] 'interest in the expression outweighs the government employer's interest in regulating it.'" Jantzen , 188 F.3d at 1257 (quoting Horstkoetter , 159 F.3d at 1272-73). However, the employer must also articulate its proffered interest in regulating the speech in question. "We will defer to a public employer's reasonable predictions of disruption, but those predictions must be supported by the presentation of specific evidence. The [employer] cannot satisfy its burden by making purely speculative allegations." Cragg v. City of Osawatomie , 143 F.3d 1343, 1347 (10th Cir. 1998) (internal quotation omitted).

Here, the City has never articulated any particular interests it had in limiting or punishing Ms. Barker's speech, nor has it articulated how that speech

actually, or even potentially, disrupted its governmental functions. [2] "The

Pickering  balancing test requires a 'fact-sensitive' weighing of the government's

interests."   Anderson v. McCotter  , 100 F.3d 723, 729 (10th Cir. 1996) (quoting

Board of County Comm'rs v. Umbehr    , 518 U.S. 668, 677 (1996)).   While the

district court concluded that "the efficient operation of city business undoubtedly

suffered while [the mayor and City Council members] were distracted with such

matters as suits against the city clerk and a second election campaign to retain

their seats," Order at 10, Appellant's App. Vol. II at 781, no actual evidence

---

[2]In its summary judgment motion, the City first presented the description of
Ms. Barker's duties that led the district court to conclude that her job was subject
to political affiliation.  It then cited, as it does in its appellate brief, a mixture of
freedom of association (Elrod, Branti) and free speech (Pickering, Connick,
Rankin v. McPherson, 483 U.S. 378 (1987)) cases indicating that the government
has an interest in close working relationships, loyalty, confidentiality, and the
speaker's job performance.  The City concluded with the following analysis of
Ms. Barker's claims:

> Clearly, both plaintiff's job and the particular speech and
> associations at issue here meet the above standards.  Assuming
> Plaintiff's allegations are true, had Palmateer chosen to do so,
> plaintiff's employment could have been terminated based upon her
> speech and associations, because of the particular job she held and
> the effect of her speech and her associations on her ability to perform
> her position.  Like the Supreme Court's example of a governor and
> his staff [in Branti], speech of an administrative assistant to the City
> Manager is not protected, as the overriding interest of her employer
> must prevail.

Appellant's App. Vol. I at 47 (citations omitted).  The City did not refer to
evidence relevant to its interests in limiting Ms. Barker's speech, nor evidence
indicating that her speech was disruptive.

indicates that the City experienced any disruption, that any such disruption was reasonably predicted, or that the City itself had any particular interest in limiting Ms. Barker's speech.  Accordingly, the district court erred in granting summary judgment to the City.    See Andersen , 100 F.3d at 729.  We therefore reverse the grant of summary judgment to the City on Ms. Barker's free speech claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM the grant of summary judgment to the City on Ms. Barker's political association claim and REVERSE the grant of summary judgment on Ms. Barker's free speech claim.  We REMAND this matter for further proceedings consistent herewith.