**Andrea RICH, Plaintiff,**

v.

**BENT COUNTY; Las Animas Community Coalition; Bent County Commissioners John Roesch; Lawrence Sena; Former Bent County Commissioner Kenneth Kester; Jeri–Peterson–Zimmermann; Administrator of the Las Animas Community Coalition and Member of the Advisory Board of the Las Animas Community Coalition and Gerry Oyen Member of the Advisory Board of the Las Animas Community Coalition, Defendants.**

No. Civ.A. 99–K–1485.

United States District Court,
D. Colorado.

Nov. 9, 2000.

Danny Robert Hemphill, Danny R. Hemphill Law Office, Boulder, CO, for Plaintiff.

Josh Adam Marks, Hall & Evans, Denver, CO, Robert M. Liechty, PC, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Andrea Rich asserts causes of action under 42 U.S.C. § 1983 for violation of First Amendment Rights by retaliating against her for reporting fraudulent use of grant funds and under Title VII for gender and pregnancy discrimination. She also asserts supplemental state law claims for breach of employment contract, breach of implied contract, promissory estoppel, wrongful discharge in violation of public policy, abuse of process and malicious prosecution, and intentional interference with contractual relations.[1] Defendants Bent County, John Roesch, Lawrence Sena and Kenneth Kester, (collectively "County Defendants") and Defendants Las Animas Community Coalition, Jeri–Zimmerman and Gerry Owen, (collectively "Coalition Defendants") have filed summary judgment motions on all claims for relief. Rich has not filed a response to either motion for summary judgment. I grant the motions and dismiss all claims.

### I. *Background.*

This action arises out of Rich's termination from employment as administrative assistant for Coalition Defendants. She claims the termination was in retaliation for her reporting fraudulent use and misappropriation of grant funds. (Compl.¶ 1.) Las Animas Community Coalition ("LACC") is a community program in Bent County that administers a grant from the Colorado Department of Criminal Justice ("DCJ") to fund a community project called "Las Animas—A Community that Cares." (Jeri Zimmerman Dep. at 86.) Bent County administered the DCJ grant as a "pass through agency" that signed checks for salaries and various disbursements. (Sena Dep. at 9.) Bent County had no control over LACC's operations, and no input as to how the grant money was spent. (*Id.* at 56.) The program was administered by Zimmerman, who was compensated for her services through grant funds. (Zimmermann Dep. at 19, 20.)

LACC hired Rich as its administrative assistant in October 1996. (Compl.¶ 14.) Rich understood she was an employee of LACC, not of Bent County. (Rich Dep. at 17.) She admits she had no employment contract and understood she was an at-will employee. (*Id.* at 95, 96.) Rich took maternity leave from April 2, 1997 to May 22, 1997, (Compl.¶ 17), filled out time sheets and received her monthly salary while on that leave. (Rich Dep. at 54, 166, 167.) Rich claims Zimmermann promised she would be paid while on maternity leave. (Compl.¶ 16.) Rich was later charged and convicted of theft from LACC and of offering a false instrument for recording in Bent County based on allegations she reported hours she did not work and was paid for such hours. (County Def's. Br. Mot.Summ.J., Ex. A.)

Rich received a preliminary evaluation on July 22, 1997 concerning Zimmerman's

---

**1.** On November 30, 1999, I dismissed all claims brought by Jay Rich, Andrea Rich's husband; the fourth through seventh claims against Bent County; the fifth claim against the individual commissioners; and the eighth and ninth claims for relief.

problems in locating her during normal working hours. (Rich Dep. at 23.) On September 12, 1997, Rich met with Community Coalition board members, Defendant Oyen and Thomas Hobbs,[2] to discuss issues of concern. (*Id.* at 28.) The members reiterated ongoing problems concerning Zimmermann's inability to find Rich. (*Id.* at 28.) At this meeting, Rich discussed her discomfort with the paperwork back-up connected with the reports she was preparing and signing to submit to DCJ concerning various LACC expenditures of the grant money. (*Id.* at 125, 126.) Rich expressed her concern about the adequacy of the background documents submitted to the DCJ in support of the Coalition's expenditures, stating that, if DCJ had problems with grant money expenditures, it might impact her as her name was on the reports as having prepared them. (*Id.*)

LACC determined Rich had filled out time sheets and received unauthorized pay for the periods she was on maternity leave and told Rich she needed to repay the money. (Oyen Dep. at 21.) LACC approached the Bent County Commissioners concerning the matter because of their potential liability for the money and because the County administered the grant funds. (Zimmermann Dep. at 39, 41.) Bent County agreed with LACC's recommendation to terminate Rich. (Sena Dep. at 40.)

LACC terminated Rich on October 2, 1997. (Compl.¶ 33.) Rich claimed her termination was a result of her bringing improprieties of Zimmermann to the attention of the other two board members of LACC, Oyen and Hobbs. (Compl.¶ 1.)

## II. *Applicable Standards for Summary Judgment.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Price v. Public Serv. Co. of Colorado,* 1 F.Supp.2d 1216, 1221 (D.Colo.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). One of the principle purposes of summary judgment is to dispose of factually unsupported claims, and Rule 56(c) should be interpreted in a way that allows it to accomplish this purpose. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. There are no genuine issues for trial if the record, taken as a whole, would not persuade a rational trier of fact to find for the nonmoving party. *See Price,* 1 F.Supp.2d at 1222.

The moving party bears the initial burden of showing the absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets this burden, the burden shifts to the nonmoving party. *See id.* The court should view the record in the light most favorable to the nonmoving party, but the nonmoving party " 'may not rest on the mere allegations or denials of his pleadings.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The nonmoving party must provide specific facts showing a genuine issue of material fact as to the essential elements of his case in order to survive the motion. *See id.* The nonmoving party's identification of facts "must be based upon personal knowledge and set forth facts that would be admissible into evidence; conclusory and self-serving affidavits are not sufficient." *Id.*

---

**2.** Mr. Hobbs was not named as a defendant because Rich did not think he was responsible.

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See id.* (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.) The court must determine " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Id.* (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

### III. *Merits.*

1. *First Claim under 42 U.S.C. § 1983 for violation of First Amendment rights.*

Rich asserts she was terminated by Defendants in retaliation for her reporting of fraudulent use of grant funds, and such termination was "under color of custom and usage required and enforced by officials of Bent County." (Compl.¶¶ 56–57.) She maintains Zimmermann violated the terms of the grant agreement provided by the DCJ. (*Id.* ¶ 23.)

■ The Supreme Court has developed the *Pickering* analysis, a four-part framework for analyzing a public employee's contention that she has been retaliated against for the exercise of her First Amendment rights. *See Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 146–47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Cragg v. City of Osawatomie,* 143 F.3d 1343, 1346 (10th Cir.1998). First, the court must determine whether the employee's speech or conduct was a matter of public concern. *See Connick,* 461 U.S. at 146, 103 S.Ct. 1684; *Cragg,* 143 F.3d at 1346. Second, if the employee spoke as a citizen on a matter of public concern, the court balances the employee's interest as a citizen in speaking out on matters of public concern against the interests of the governmental entity in promoting the efficiency of the public service it provides through its employees. *See Cragg,* 143 F.3d at 1346. Third, if the employee's interests outweigh the state's

interests, the employee must demonstrate her protected speech was a substantial or motivating factor in the detrimental employment decision. *See id.* Fourth, if the employee is able to make this difficult showing, the employer must demonstrate by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the employee's First Amendment activity. *See id.*

The first and second prongs of the *Pickering* analysis are always questions of law for the court. *See id.* The third and fourth prongs are ordinarily questions of fact for the trier of fact. *See id.*

#### a. *Public Concern.*

■ Whether, as a matter of law, the speech involved implicates a matter of public concern is determined by its content, context and form as revealed by the entire record. *See Connick,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Prager v. LaFaver,* 180 F.3d 1185, 1190 (10th Cir.1999). The pertinent inquiry is whether Rich was speaking as an employee or as a citizen. *See Lancaster v. Independent School Dist. No. 5,* 149 F.3d 1228, 1233 (10th Cir.1998). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of public interest, no First Amendment protection is provided. Speech is considered a matter of public concern when it relates to a topic of political, social or other concern to the community." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684.

■ Speech that may be of general interest to the public is not automatically provided First Amendment protection. *See id.* The content must be sufficiently informative so as to be helpful to the public in evaluating the conduct of the government. The focus in the evaluation of the form and context of the speech at issue is on the motivation of the speaker; "whether the speech was calculated to disclose

misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *McEvoy*, 882 F.2d at 466. If matters solely of personal interest in the speech at issue predominate over any interest Rich might have as a member of the general public, the speech is not protected and the courts should not intercede. *See id.*

■ Defendants assert Rich's speech is not protected because it does not constitute a matter of public concern. They cite Rich's deposition testimony discussing a meeting between her and the LACC Management Team members, Oyen and Hobbs. At the meeting, Rich stated she was uncomfortable with the paperwork back-up and reports she was preparing and signing concerning various LACC expenditures because the money appeared to be benefitting other community programs. (Rich Dep. at 125, 126, 132, 133.) Defendants argue Rich did not make any accusation of illegal or improper expenditure of the grant money, nor raise any specific examples of misuse or misappropriation of grant money. They maintain Rich did not make any allegation of misuse of the grant money until after her termination and her sole expressed concern was that she would be in trouble as a result of her signing off on the reports. Thus, Defendants argue, Rich's discussion with Oyen and Hobbs was not a matter of public concern.

At several points during her deposition, Rich expressed her concern not that the grant money had been misappropriated, but rather that she had prepared and signed the report. (Rich Dep. at 34, 126, 133.) Rich acknowledged she did not provide specific details of misappropriation of funds at the meeting, but stated she received the documents provided at the deposition after her termination, following her request under the Freedom of Information Act. (*Id.* at 38, 40.) Oyen, who was present at the meeting with Rich, testified he was not aware that Rich had raised concerns about the use of funds by Zimmermann. (Oyen Dep. at 20, 21.)

Rich has not come forth with specific facts to create a genuine issue of material fact that her speech was that of a citizen implicating a matter of public concern as opposed to that of an employee predominantly concerned with her personal interests.

### b. *Motivating Factor.*

Defendants argue Rich has not come forth with specific facts to create a genuine issue of fact regarding the third prong of *Pickering* which states, if the employee's interests in speaking outweigh the state's interests in promoting efficiency (second prong), the employee must demonstrate her protected speech was a substantial or motivating factor in the detrimental employment decision. *See Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir.1998). Defendants assert Rich cannot establish the County Commissioners were aware of, let alone motivated by, her alleged report of misuse of DCJ grant funds.

Rich admits she never raised any concerns regarding the reports submitted to DCJ or use of grant funds with the County Commissioners. (Rich Dep. at 129, 131.) Because the County Commissioners had no knowledge of Rich's concerns regarding the use of the grant funds before her termination, they could not have been motivated to agree with the LACC's decision to terminate Rich based on the fact that she had voiced such concerns.

Rich has not come forward with any evidence to create a genuine issue as to the material fact that the motivation for the speech that she contends is protected was of personal interest nor that the motivating factor in her termination was not her speech, but the theft of money from the grant funds. Because Rich fails to provide any facts to satisfy at least two of the prongs of the *Pickering* analysis, her speech is not entitled to First Amendment protection.

2. *Second Claim for Breach of Employment Contract; Third Claim Breach of Implied Contract, Promissory Estoppel.*

Defendants move for summary judgment on the second claim for breach of employment contract and the third for breach of implied contract and promissory estoppel. Rich asserts she relied upon County Defendants' written policies and procedures which entitled her to a legitimate expectation of job security, good faith and fair dealing, continued employment, and the right to file a grievance in consideration of her continued employment. (Compl.¶ 59.) She asserts they breached the terms of her employment contract regarding good faith and grievances. (Compl.¶¶ 60, 61.)

▪ Under Colorado law, an individual hired for an indefinite period of time is an at-will employee whose employment can be terminated by either party without cause and without notice. Generally, an at-will employee's termination will not give rise to a cause of action. *See Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987), applied in *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1464 (10th Cir.1994). An employer may be held liable for the discharge of an at-will employee, however, where an implied contract arises out of company policy and employment manuals, or where an employee relies on the policies and manuals to his detriment. *See id.* at 711–12.

▪ An employee may be able to enforce certain provisions contained in an employee manual if she can show she is entitled to relief under either an implied contract or promissory estoppel theory. *See Kuta v. Joint Dist. No. 50(J),* 799 P.2d 379, 382 (Colo.1990) (concerning termination procedures). The employee must consider the manual as a commitment from the employer and rely upon such procedures. *See id.* at 382–83.

Defendants assert Rich did not rely upon the provisions of the policy manual

and that she was told by Zimmermann when she accepted the job that she was entitled to the same benefits as a County employee, but that Rich understood she was an employee of the LACC, not the County. (Zimmermann Dep. at 165; Rich Dep. at 17, 18).

The policy manual provides for unpaid leave pursuant to the Family and Medical Leave Act of 1993 (FMLA), but does not provide for paid maternity leave. (County Def.'s Br.Mot.Summ.J., Ex. G. § 2.3). Thus, even if Rich could show the policy manual created a contract, she cannot show Bent County breached its terms. Additionally, the manual provides that all employees are at-will employees terminable with or without cause and appropriate grounds for termination include moral misconduct and dishonesty. (*Id.* at § 1.14.) Rich's conviction of theft and fraud constitute proof of moral misconduct and dishonesty. Moreover, assuming the policy manual applied to Rich, Defendants point out she never inquired or availed herself of any of its grievance and appeal procedures.

Rich also asserts Bent County should have reasonably expected her to consider Zimmermann's written materials and verbal representations as a commitment from the Defendants. (Compl.¶ 63.) She asserts she relied upon these materials and representations and injustice may only be avoided by following them. (*Id.* ¶¶ 64, 65.)

Rich admits she was an at-will employee. At Rich's criminal trial, the jury found no contract or representation to exist between Rich and Zimmermann which would be the basis for an implied contract. Rich has not come forward with any evidence on which to base her implied contract and promissory estoppel claims.

3. *Fourth Claim for Retaliatory Wrongful Discharge in Violation of Public Policy.*

Rich's fourth claim is for retaliatory discharge in violation of public policy. She

asserts Defendants prohibited her from reporting fraudulent use of grant monies and her continued employment was dependent on her ignoring such practices. (Compl.¶ 67.) In so doing, they prohibited her from performing a public duty or exercising an important job-related right or privilege. (Compl.¶ 68.) Rich asserts her refusal to comply with the Defendant's directives was based on Plaintiff's reasonable belief the action ordered by Defendants was illegal or contrary to public policy and she was terminated for refusing to perform these acts. (Compl.¶¶ 71, 72.) She claims, because of Defendants' actions, she suffered lost wages, benefits, earning capacity, employment opportunities, and other damages. (Compl.¶ 73.)

■ "Under common law, either an employer or an employee can terminate an at-will employment relationship without incurring legal liability for this termination." *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 (Colo.1992). To satisfy a claim for wrongful discharge under the public policy exception, a plaintiff must show "(1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties; (2) the action directed by the employer would violate a statute or clearly expressed public policy; (3) the employee was terminated as a result of refusing to perform the illegal act; and (4) the employer was aware or should have been aware that the employee's refusal was based upon the reasonable belief that the act was illegal." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 667 (Colo.1999).

To prove this claim, Rich must show she was terminated because she was engaged in reporting fraudulent use of grant monies and was fired for this reason. Defendants assert Rich denied she was making a report of fraudulent use of grant monies in her deposition. They maintain she was fired because she committed theft. Rich has not provided specific facts showing a genuine issue of material fact as to the essential elements of this claim, summary judgment is ineluctable.

### 4. *Fifth Claim for Abuse of Process and Malicious Prosecution.*

Rich claims Defendants have made and conspired to make false statements and claims concerning her conduct and caused her to be prosecuted for crimes they knew she did not commit. Defendants are entitled to summary judgment on this claim, *inter alia*, because Rich has not come forth nor can she come forth with any evidence to establish the essential requirement that "the criminal case ended in favor of the plaintiff." *See* C.J.I. 4th 17:1 (Aug.1999) and cases cited therein.

### 5. *Sixth Claim for Intentional Infliction of Emotional Distress.*

■ "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970). Rich claims she suffered severe emotional distress caused by Defendants' "extreme and outrageous conduct" with the intent of causing severe emotional distress. (Compl.¶¶ 80–83.) She asserts the source of her extreme emotional distress was the allegation that she stole money from the LACC, the inference that she was dishonest, the criminal process and trial. (Rich Dep. at 99, 103, 105.)

Rich has been found guilty of theft and Defendants assert that such theft was the reason for her termination. She has not come forward with any facts in support of her bare allegation that Defendants engaged in extreme and outrageous conduct.

### 6. *Seventh Claim for Intentional Interference with Contractual Relations.*

Rich asserts a valid contract existed between her and the LACC. (Compl.¶ 85.) She maintains County Defendants had knowledge of the contract or facts which should have led them to inquire as to the existence of the contract, and by word or

conduct, interfered with the performance of her contract. (Compl.¶¶ 86, 87.)

 "The existence of a contract may impose upon non-parties a duty not to interfere with the performance of that contract." *Trimble v. City and County of Denver*, 697 P.2d 716, 725 (Colo.1985). A party who intentionally and improperly interferes with the performance of a contract between another and a third party by inducing or otherwise causing the third person not to perform the contract is subject to liability for the tort of intentional interference with contractual relations. *See Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo.1984).

Defendants assert Rich stole money from her employer and this was a valid reason for terminating her employment. Rich's claim rests on bare allegations which she fails to support with any specific facts.

7. *Title VII Gender or Pregnancy Discrimination.*

Rich asserts Bent County's conduct amounts to discrimination against her pursuant to Title VII, 42 U.S.C.2000e. (Compl.¶¶ 94, 95.) Defendants argue Rich cannot meet the burden of establishing a prima facie case of discrimination, and even if she can meet this burden, the reasons for her termination were not pretextual as a matter of law.

"[A] pregnancy discrimination claim is analyzed the same as other Title VII claims." *EEOC v. Ackerman*, 956 F.2d 944, 947 (10th Cir.1992). In the first stage, the plaintiff must show a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "She must show: (1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant or male

employee." *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148 (10th Cir.1999).

Rich has not come forward with any evidence to establish a prima facie case of discrimination under Title VII and summary judgment is appropriate on this claim. Even were she to establish such prima facie case, she could not show the stated reason for her discharge, namely theft, was pretextual.

IV. *Conclusion.*

For the aforesaid reasons, I grant Defendants' summary judgment motions and dismiss all remaining claims. Accordingly,

IT IS ORDERED THAT Community–Coalition Defendants' Motion for Summary Judgment, filed June 27, 2000, and Defendants Bent County, John Roesch, Lawrence Sena, and Kenneth Kester's Motion for Summary Judgment, filed June 30, 2000, are GRANTED and this case is DISMISSED with each party to pay his, her or its own costs.