**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DONNIS F. KENT,

      Plaintiff - Appellant,

v.

BRUCE MARTIN, in his individual
capacity and in his official capacity as
County Clerk of Alfalfa County,
Oklahoma; ALFALFA COUNTY
BOARD OF COUNTY
COMMISSIONERS,

      Defendants - Appellees.

No. 00-6144

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-99-245-M)**

---

Phyllis L. Walta, Walta & Walta, Hennessey, Oklahoma, for Plaintiff-Appellant.

James L. Gibbs, II (Chris J. Collins and Michael L. Carr on the brief), Collins,
Zorn, Jones & Wagner, P.C., Oklahoma City, Oklahoma, for Defendants-
Appellees.

---

Before **BRISCOE**, **BALDOCK,** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Donnis Kent, a former employee of the Alfalfa County Clerk's office, brought this action under 42 U.S.C. § 1983 alleging retaliatory discharge in violation of the First Amendment. Kent's employment as a deputy clerk was terminated six months after her unsuccessful campaign to unseat Bruce Martin as County Clerk and the publication in a local newspaper of her statements concerning Martin's job performance. She appeals the district court's grant of summary judgment for defendants Martin and the Board of County Commissioners. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

**I**

Kent was employed as Second Deputy to the County Clerk in Alfalfa County, Oklahoma, from 1988 to 1997. In 1993, Bruce Martin replaced Kaye Jay as County Clerk, and Kent worked under Martin from his election until her termination in February 1997. During that time, the Clerk's office contained only one additional employee, Dorothy Steffey.

When Martin filed for reelection at the end of his term in 1996, Kent ran against him. Six days after Kent announced her candidacy, Martin began to document incidents of alleged misconduct on her part; those incidents numbered seventy-nine after seven months.[1]

---

[1] Kent's alleged performance deficiencies between July 1996 and February 1997 included gossiping, failure to relay phone messages, failure to follow

(continued...)

Shortly before the August 1996 primary, a local newspaper reported statements Kent made describing what she believed were Martin's abuses of his office, including his absence during approximately five-and-a-half months in a single year and "double-dipping" when claiming travel reimbursements. Kent lost in the three-way primary, and six months later, on February 28, 1997, Martin terminated Kent's employment. In a letter to the Oklahoma Unemployment Security Commission, Martin listed three reasons for the termination. Although two of those reasons concerned incidents occurring on February 20 and 27, 1997, Martin stated in the letter that he "made up [his] mind on February 14" to release Kent. (App. at 291.) Martin, however, testified that he decided to fire Kent in June 1996, before Kent filed to oppose him for County Clerk, but was advised by the district attorney to wait until "after the campaign was over." (Id. at 167.)

The parties dispute both the initial tenor of their relationship and the extent to which it changed as a result of the campaign. It appears from the record that Martin may have been displeased with Kent's performance as early as 1993,[2]

---

[1](...continued)
proper bidding procedures, performing outside business in the Clerk's office, and general failure to communicate cordially within the office. Kent disputes the validity of many of the documented incidents.

[2] Between January 1993 and January 1996, Martin documented three minor instances of misconduct involving Kent. On two of those occasions, Kent had arrived at work three to four minutes late. The third instance concerned procedure for obtaining bids on fuel and was documented neither in a warning to

(continued...)

although he claims new and more serious problems arose after the August primary. On the other hand, Kent alleges that her bid to oust Martin changed Martin's attitude toward her but did not affect Kent's attitude or performance or the overall efficiency of the workplace. Kent also argues that the reasons Martin gave for her termination were unrelated to any disruption that her candidacy might have caused.

In her suit, Kent alleges that defendants violated the First Amendment by terminating her employment because she opposed Martin for the position of Clerk and spoke publicly about his absences and other alleged abuses. She appeals the district court's grant of summary judgment in defendants' favor.[3]

**II**

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. Barker v. City of Del City, 215 F.3d 1134, 1137 (10th Cir. 2000). Summary judgment is appropriate only if the evidence

---

(...continued)
Kent nor in her personnel file. In his deposition, Martin discussed other instances of improper conduct by Kent prior to 1996, including "gossiping" and failing to relay phone messages, but he admitted those had not been documented. (App. at 144.) Martin also testified that Kent was "sneaky," "rude," and "talked behind [his] back" the entire time they worked together (id. at 171), but that he did not fire her because he "didn't want to put her out of a job" (id. at 146).

[3] Kent does not appeal the grant of defendants' summary judgment motion on her additional federal claim of denial of due process and her pendent state claim for breach of her employment contract.

-4-

shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"In First Amendment cases, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Barker, 215 F.3d at 1137 (quotation omitted). In a civil rights action challenging an adverse employment decision allegedly made in reaction to an employee's speech, whether the employee's interest in making the statement outweighs the state's interests as employer is treated as a question of law requiring de novo review. See Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir. 1998).

**A**

When a government employer has allegedly taken adverse action because of an employee's exercise of her right of free speech, we apply the balancing test derived from Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983), (the "Pickering/Connick test"). Barker, 215 F.3d at 1138; see also Jantzen v. Hawkins, 188 F.3d 1247, 1251 (10th Cir. 1999); Horstkoetter v. Dep't of Pub. Safety, 159 F.3d 1265, 1271 (10th Cir. 1998). That four-part test asks the following questions:

> 1. Whether the speech in question involves a matter of public concern.

2. If so, we must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace.

3. Employee must show the speech was a substantial factor driving the challenged governmental action.

4. If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech[?]

Barker, 215 F.3d at 1138–39 (quoting Jantzen, 188 F.3d at 1257 (further citation omitted)). "The first two questions are ones of law for the court, while the latter two questions are ones of fact for the jury." Id. at 1139; see also Horstkoetter, 159 F.3d at 1271.

**B**

As the district court noted, and defendants conceded at oral argument, an employee's candidacy for political office "undoubtedly relates to matters of public concern," and the first part of the test is therefore satisfied in this case. Jantzen, 188 F.3d at 1257.

At issue is the district court's resolution of the second prong of the Pickering/Connick test in defendants' favor. In granting summary judgment for defendants, the court concluded that their interest in maintaining an effective workplace outweighed Kent's interest in her political expression. That conclusion was based on what the court believed were defendants' reasonable

predictions of workplace disruption. The court relied on Jantzen, 188 F.3d at 1257, for the proposition that courts "'will defer to a public employer's reasonable predictions of disruption, but those predications [sic] must be supported by the presentation of specific evidence'" (quoting Cragg, 143 F.3d at 1347). According to Kent, the district court applied the wrong legal standard when it accepted evidence of a "prediction of disruption" as evidence of defendants' interest in maintaining an efficient workplace by regulating Kent's speech. Kent argues that evidence of "actual disruption" is required to justify an employee's termination several months after the protected speech occurred. (Appellant's Br. at 13.) We agree.

In Jantzen we held, in the context of a deputy sheriff's termination after announcing his candidacy for sheriff, that "at the time of [plaintiff] Haugland's termination (in contrast to [other deputies'] termination six months thereafter), there was specific evidence to support [his employer's] reasonable prediction" of disruption. 188 F.3d at 1257–58. In that case, plaintiff Haugland was fired immediately, so that predictions of disruption were the only possible evidence of the employer's interest in regulating the expression at the time of the firing. That is why we drew a distinction between Haugland, who had been fired immediately, and the fellow deputies who supported his candidacy and were fired six months

later.[4] Six months after the employees' expression, a so-called "prediction" of disruption would be meaningless to justify their termination, and under our case law evidence of actual disruption would be required to outweigh the employees' interest in their speech.

In some cases we have deferred to a public employer's predictions of disruption—rather than requiring evidence of actual disruption in all cases—only because we recognize that a public employer does not "have to wait for speech actually to disrupt core operations before taking action." Moore v. City of Wynnewood, 57 F.3d 924, 934 (10th Cir. 1995). In this case, because Martin's alleged fear of disruption did not lead him to fire Kent immediately, defendants must show actual disruption in order to articulate an interest in regulating Kent's speech six months after the fact.[5]

The factual circumstances we confront in this case are analogous to those in Prager v. LaFaver, 180 F.3d 1185 (10th Cir. 1999). In Prager, a whistleblower

---

[4] We did not directly address the remaining plaintiffs' free speech claims because they had failed to raise the Pickering/Connick issue on appeal. Jantzen, 188 F.3d at 1256–57.

[5] Defendants' assertion that "Martin was not required to allow the events to unfold to the extent they did with Ms. Kent" is irrelevant to our inquiry. (Appellees' Br. at 14.) The suggestion that Martin deliberately waited to fire Kent in an attempt to accumulate several documented instances of alleged misconduct does not relieve defendants of the burden to show actual disruption caused by Kent's speech. That documentation goes to the question whether Martin would have terminated Kent irrespective of her political speech, a question that is for the trier of fact. Cragg, 143 F.3d at 1347.

was terminated from the Kansas Department of Revenue several months after he spoke out regarding abuses on the part of his employer. Id. at 1188–89. This Court held that a showing of "'actual disruption of services which results from the employee['s] speech'" is required in that situation to justify the employee's termination. Id. at 1191 (quoting Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 594 (10th Cir. 1994) (quoting Schalk v. Gallemore, 906 F.2d 491, 496 (10th Cir. 1990))). As we noted in Jantzen, because of the time lapse, "it was reasonable [in Prager] to look for proof of actual disruption in order to justify the subsequent firing." 188 F.3d at 1258 n.8.[6]

In Barker, another factually similar case, an administrative assistant to the city manager was fired several months after she gave an interview regarding accusations that the City Council had violated a state statute. 215 F.3d at 1136–37. We held the district court erred in basing summary judgment for the defendant under the second prong of the Pickering/Connick test on the employer's speculative allegations of disruption rather than requiring evidence of actual

---

[6] In Cragg, 143 F.3d at 1347, we stated that "[w]e will defer to a public employer's reasonable predictions of disruption [if] . . . supported by the presentation of specific evidence." However, we concluded that because "[o]ur review of the record reveals no evidence of disruption caused by Mr. Cragg's political speech," his employer had "failed to demonstrate by specific evidence" that his speech "contributed to any disruption." Id. Thus, as in Prager, because the employee was fired several months after his initial exercise of speech, the fact that the employer could not show actual disruption deprived its predictions of disruption of any probative value.

disruption.  Id.  Because the defendant had failed to produce "evidence indicating that her speech was disruptive," we held the plaintiff should have been allowed to proceed with her free speech claim.  Id. at 1140 & n.2.  In this case, as in Barker, it was improper to rely on a prediction of disruption stemming from the employee's speech when Martin's decision not to fire Kent for six months raises a genuine issue of material fact regarding whether disruption actually occurred.[7]

Because Kent was not fired until six months after her campaign for office and public statements concerning Martin's job performance, evidence of a prediction of disruption is insufficient to justify summary judgment for defendants under the second prong of the Pickering/Connick test.  Under our precedent, the district court should have required defendants to make a showing of actual disruption in order to articulate an efficiency interest in regulating Kent's speech.  Our cases applying the "reasonable prediction of disruption" standard have done so in the context of a termination soon after the employee's

---

[7] Defendants cite Caruso v. DeLuca, 81 F.3d 666 (7th Cir. 1996), in support of their argument that actual disruption need not be shown under the second prong of the test.  In Caruso, a deputy clerk who opposed the City Clerk in an election was not reappointed because of her employer's prediction that workplace disruption would ensue.  There, however, an impending redistribution of duties within the clerk's office made it less likely that harmony and efficiency could be maintained in the wake of election-related antagonism between Caruso and her boss.  Id. at 668, 671.  As the redistribution had not yet occurred, predictions of disruption were the only evidence available.  That is not the case here.

exercise of speech, when the intent of the termination was to avoid actual disruption.  See Jantzen, 188 F.3d at 1257–58; Moore, 57 F.3d at 927–28, 934. That legal standard is inapplicable when an employer has allowed an employee to continue to work after the protected expression.

If there has been no actual disruption justifying termination during the six months following an employee's protected speech, it is nonsensical to rely ex post facto on a "prediction" of disruption to tip the balance in favor of an employer's interest in an efficient workplace.  We hold that the district court erred when it granted summary judgment in favor of defendants based on their prediction of workplace disruption.

**C**

The district court did not address the question whether defendants can show actual disruption on summary judgment so as to prevail under the second prong of the Pickering/Connick test.  We therefore remand to the district court for application of the correct legal standard.

**III**

The judgment of the district court is **REVERSED**, and the matter is **REMANDED** for consideration of defendants' summary judgment motion under the correct legal standard.