**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 3, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-60672

_____

CHARLES M (MICKY) GENTRY,

Plaintiff-Appellee,

versus

LOWNDES COUNTY, MISSISSIPPI; ET AL,

Defendants,

JOE BROOKS, In his individual capacity,

Defendant-Appellant.

_____

LEW CORNELIUS,

Plaintiff-Appellee,

versus

LOWNDES COUNTY, MISSISSIPPI; ET AL,

Defendants,

JOE BROOKS, In his individual capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

Before JONES, WIENER, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Lowndes County and Joe Brooks, president of its board of supervisors, appeal the district court's denial of their motions for summary judgment against the appellees' political patronage dismissal claims. We conclude that the appellees, who held the posts of county road manager and county administrator, occupied politically sensitive and responsible posts in which loyalty to the elected board is an essential quality. They could therefore be terminated for supporting the board's political opponents. We therefore reverse the district court's denial of Brooks's claim of qualified immunity on this one aspect of appellees' case against Brooks. The county's appeal is dismissed.

## I. BACKGROUND

Charles Gentry is the former Lowndes County road manager, and Lew Cornelius is the former Lowndes County administrator. In January 2000, the newly elected Lowndes County board of supervisors decided by a three-to-two vote not to renew Gentry's and Cornelius's contracts; appellant Joe Brooks was the president of the new board and voted with the majority.

Gentry and Cornelius each filed suit against Lowndes County and Brooks, in his individual capacity, alleging that they

2

were discharged in violation of their First Amendment rights.[1] Specifically, Gentry alleges that he was unconstitutionally discharged for supporting and campaigning for Brooks's political opponent and for opposing Brooks's requests that he fire the son of Brooks's political opponent and perform road work to benefit Brooks's friends. Cornelius alleges that he was unconstitutionally discharged for supporting and campaigning for Brooks's political enemy, for complaining to the board about the former chancery clerk's receiving illegal funds, and for opposing Brooks's requests to fire the son of Brooks's political opponent and to hire Brooks's girlfriend.

After the district court consolidated the actions,[2] the defendants filed motions to dismiss or for summary judgment, arguing in part that Brooks should receive qualified immunity from Gentry's and Cornelius's political patronage dismissal claims.[3] Pursuant to 28 U.S.C. § 636(c), the parties consented to

---

[1]Gentry and Cornelius also alleged violations of due process, equal protection, and various state laws. Those issues, however, are not presently before this court.

[2]The district court consolidated the actions of Gentry, Cornelius, and a third plaintiff Douglas Ray Buchanan. This appeal, however, does not concern Buchanan.

[3]The defendants also sought peremptory relief predicated inter alia on the application of the Connick-Pickering balancing test to specific speech by the appellees, which the appellees characterize as whistleblower speech. For instance, appellees claim First Amendment protection for their refusal to hire Brooks's friends or fire his foes and Gentry's objection to a demand to use county crews on a private construction project. The magistrate judge denied relief on these claims and issues, and they have not been specifically briefed on appeal.

3

disposition of the case by a magistrate judge. The magistrate judge denied the summary judgment motions.

## II. DISCUSSION

### A. Jurisdiction

"District court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, notwithstanding their interlocutory character, when based on a conclusion of law." Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 340 (5th Cir. 2001) (citing Lukan v. N. Forest ISD, 183 F.3d 342, 345 (5th Cir. 1999)). Whether a public employee can be dismissed for exercising his First Amendment right to support political opponents of his superiors is a question of law for the court. Hoard v. Sizemore, 198 F.3d 205, 211-12 (6th Cir. 1999). The Fifth Circuit reviews the denial of qualified immunity *de novo*. Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 284 (5th Cir. 2002).

Lowndes County urges the exercise of jurisdiction over its interlocutory appeal because the defenses asserted by Brooks would, if accepted, also protect the county from liability. Such jurisdiction is clearly foreclosed, since the county is unprotected by immunity. See, e.g., McKee v. Rockwall, 877 F.2d 409, 412 (5th Cir. 1989).

**B.  Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666, 678 (2002) (citation omitted); Roe v. Tex. Dep't of Protective & Regulatory Servs., 299 F.3d 395, 408-09 (5th Cir. 2002).  Qualified immunity analysis involves two steps.  The first inquiry is whether the plaintiffs have alleged a constitutional violation.  Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995). If the first inquiry is satisfied, this court must determine whether the defendant's conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred.  Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).

Gentry and Brooks allege that they were discharged in violation of their First Amendment rights because each campaigned, respectively, for Brooks's political opponent William Brown and Brooks's political enemy, fellow County Supervisor Leroy Brooks.[4]

---

[4]Joe Brooks represented District 4, and Leroy Brooks represented District 5.  Both are Democrats.  They were, however, political enemies; there was animosity between the two men, and Joe Brooks politicked against Leroy Brooks in his district.  In this circuit's political patronage firing cases, the inquiry focuses on "support of and loyalty to a particular candidate as distinguished from a political party."  Correa v. Fischer, 982 F.2d 931, 935 (5th Cir. 1993) (quoting McBee v. Jim Hogg

Brooks contends that because Gentry and Cornelius held high-level administrative positions, for which loyalty to the Board of Supervisors is essential, he did not violate their First Amendment rights even if he voted against rehiring them because of their political activites.[5]

In a number of cases, the Supreme Court has established that public employees do not necessarily shed their First Amendment rights of speech and political association in exchange for their jobs, but they often must make adjustments.[6] That is to say, the Court has acknowledged that public employees' exercise of certain First Amendment rights may legitimately be restrained where it could lead to an inability of elected officials to get their jobs done on behalf of the public. See Branti, 445 U.S. at 517-18.

---

County, 703 F.2d 834, 838 (5th Cir. 1983), vacated on other grounds, 730 F.2d 1009 (1984) (en banc)).

[5]Given the fact that the entire board had to vote on Gentry's and Cornelius's terminations, and that they were fired by a 3-2 vote, their seeking to impose liability on Brooks individually seems at best a queer strategic choice and at most, not even a cognizable claim. Brooks plainly could not fire these officials on his own, hence it seems doubtful that he could have caused a constitutional violation. Brooks appears to have inartfully raised this point in the trial court, arguing that under Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001), he could not be held individually liable. Oden, however, interprets 42 U.S.C. § 1981, not the question (raised here) of a county supervisor's individual § 1983 liability for a decision that could only be made by the county board as an entity. In any event, Brooks has not urged this issue on appeal, and this court cannot consider issues that are not raised in a party's appellate brief. Smith v. State Farm Fire & Cas. Co., 695 F.2d 202, 206 (5th Cir. 1983).

[6]Branti v. Finkel, 445 U.S. 507, 518, 100 S. Ct. 1287, 1295, 63 L. Ed. 2d 574, 584 (1980); see also Rutan v. Republican Party, 497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990); Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

6

Courts must balance these important public and individual interests in order to determine the constitutionality of particular adverse employment actions. The balancing test pertinent here considers among other things the policy sensitivity of the employment, the nature and content of the employee's speech or political activity, the extent of public concern implicated by the speech, and whether close confidential working relations with elected officials are necessary. This circuit, interpreting the Court's decisions, places cases involving only political association, only speech, or a combination of the two on a spectrum. Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988, 993-94 (5th Cir. 1992) (en banc) (citing McBee v. Jim Hogg County, 730 F.2d 1009, 1014 (5th Cir. 1984)). Where nonpolicymaking, nonconfidential employees are discharged solely because of their private political views, little, if any, weighing[7] of an employee's First Amendment rights against an employer's right to loyal and efficient service is necessary, and the employee's rights will usually prevail. Id.; McBee, 730 F.2d at 1014. On the opposite end of the spectrum, however, are cases where employees' exercise of First Amendment privileges "clearly

---

[7]In Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), the Supreme Court expressly adopted the balancing analysis first recognized in Pickering v. Bd. of Educ., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), and applied it to cases in which a public employee asserts that he has been disciplined in retaliation for the exercise of First Amendment speech. This court adapted the test to hybrid situations involving political association as well as speech claims. See Kinsey, 950 F.2d at 993-94.

7

over-balanced [their] usefulness." McBee, 730 F.2d at 1014 (citing Ferguson v. Thomas, 430 F.2d 852, 859 (5th Cir. 1970); Duke v. N. Tex. State Univ., 469 F.2d 829 (5th Cir. 1972)). When cases fall within the spectrum, courts are to balance the extent to which "public concerns" are implicated by the employees' speech or association against the significance of maintaining a close or confidential working relationship with the public employer. Kinsey, 950 F.2d at 994. Kinsey emphasizes that where a public employee (there, a school superintendent) occupies a confidential or policymaking role, the employer's interests more easily outweigh the employee's First Amendment rights. Id.

Here, there is no doubt that Gentry and Cornelius put their political beliefs into action. On weekends and at night, Gentry campaigned for Brooks's political opponent, William Brown. Cornelius solicited votes for Brooks's political enemy, Leroy Brooks, and talked his brother-in-law out of running against Leroy. These core First Amendment political activities must be evaluated against the backdrop of the appellees' employment responsibilities.

Gentry and Cornelius concede that they owe allegiance to the Board of Supervisors as a whole. In other words, with respect to the entire board, "party affiliation is an appropriate requirement for the effective performance of the public office[s] involved." Branti, 445 U.S. at 518, 100 S. Ct. at 1295, 63 L. Ed. 2d at 584. The appellees contend, however, that they cannot be

8

required to enjoy the trust and confidence of or demonstrate political loyalty to Brooks as an individual supervisor. This perspective is artificially narrow for two reasons. First, Kinsey, is contrary to their position, as this court held that a school board did not violate the superintendent's First Amendment rights when it terminated his contract because he opposed the election of several, but not all, board members. Kinsey, 950 F.2d at 996. Second, what Kinsey means is that if a public employee's loyalty is owed to a multimember governing board, he cannot choose political favorites or enemies among the board because shifting coalitions or electoral victories may too easily render the employee's decisions, made in accord with personal preference, at odds with the board majority view. Political neutrality toward all elected board members must be the rule in such situations, if the employee holds a position in which neutrality may be constitutionally required.

This leads to appellees' additional line of attack, which is that their posts in county government are not of a policymaking nature and hence do not require them to stifle their exercise of First Amendment political rights. Although this court has not previously addressed whether county road managers or administrators occupy politically sensitive posts, we have permitted dismissals of politically unreliable employees in a number of other positions following the applicable balancing test. See, e.g., Aucoin v. Haney, 306 F.3d 268 (5th Cir. 2002) (assistant district attorney);

9

Kinsey, 950 F.2d at 995-96 (school superintendent); Soderstrum v. Town of Grand Isle, 925 F.2d 135, 141 (5th Cir. 1991) (personal secretary to police chief); Stegmaier v. Trammell, 597 F.2d 1027, 1040 (5th Cir. 1979) (deputy clerk).[8] We have also held that qualified immunity is appropriate in a case where "neither the Fifth Circuit nor the Supreme Court had addressed the issue of political patronage in the hiring or firing of investigators in district attorneys' offices, and neither had addressed an issue sufficiently analogous that a reasonable official would understand from its resolution that it is a First Amendment violation to dismiss or not hire an investigator on the grounds that the investigator supported the campaign of the official's opponent." Gunaca v. Texas, 65 F.3d 467, 475 (5th Cir. 1995).

Nevertheless, other courts have uniformly held that the First Amendment does not protect employees in positions similar to the Lowndes County road manager from political dismissals. The Sixth Circuit, for example, concluded that a county road department foreman, the equivalent of Lowndes County's road manager, occupies

---

[8]But see Brady v. Fort Bend County, 145 F.3d 691, 709-10 (5th Cir. 1998) (concluding that deputy sheriffs do not fall within the class of public servants from whom political allegiance may be demanded); Vojvodich v. Lopez, 48 F.3d 879, 886 (5th Cir. 1995) (same); Click v. Copeland, 970 F.2d 106, 112-13 (5th Cir. 1992) (same); Barrett v. Thomas, 649 F.2d 1193, 1201 (5th Cir. 1981). The deputy sheriff cases are distinguishable from our other dismissal cases either because they do not hold policymaking or confidential positions, Barrett, 649 F.2d at 1201, or because the sheriffs do not allege that the deputies' po litical activities actually or potentially could affect the Sheriffs Office's ability to provide services, Brady, 145 F.3d at 709-10; Click, 970 F.2d at 112-113; Vojvodich, 48 F.3d at 886.

an inherently political position that falls within the <u>Branti</u> exception.  <u>Hoard</u>, 198 F.3d at 213-14; <u>see</u> <u>also</u> <u>Selch v. Letts</u>, 5 F.3d 1040 (7th Cir. 1993) (political affiliation may constitutionally serve as a hiring consideration where the plaintiff, a highway subdistrict superintendent, oversaw the maintenance and repair program for state highways, buildings, grounds, and equipment); <u>Wagner v. Hawkins</u>, 634 F. Supp. 751, 754 (W.D. Ark. 1986) (county road foreman falls within the <u>Branti</u> exception).

The road manager is the second highest non-elected management position in Lowndes County.  The road manager runs a county road department supervising the building of bridges and the construction and maintenance of county roads.  He also helps to prepare a budget, purchases and leases equipment, hires assistants and employees, and carries out the general policies of the county board of supervisors.  MISS. CODE ANN. § 65-17-1.  Roads in rural Mississippi are the political lifeblood of elected officials, and the public's view of the elected supervisors depends greatly on the road manager's performance and supervision of employees.  The road manager occupies a position where "party affiliation is an appropriate requirement for the effective performance of the public office involved."  <u>Branti</u>, 445 U.S. at 518, 100 S. Ct. at 1295, 63 L. Ed. 2d at 584.  As the Sixth Circuit explained in <u>Hoard</u>,

11

> In light of the inherent nature of this position, which involves responsibility for carrying out the county judge-executive's road maintenance policy and controlling the lines of communication between the public and the judge executive, as well as the nature of the job as envisioned by the new officeholder, we conclude that the position is inherently political. The evidence in the record shows that, although the road foreman does not have significant discretionary authority as to policy matters, he serves as the judge's "alter ego" in the community with respect to road conditions.

Hoard, 198 F.3d at 213-14 (citation omitted).

The county administrator holds a similar position, though with broader policymaking authority than the road manager, and he works closely with the board of supervisors. The administrator's duties include, but are not limited to, ensuring that board orders, resolutions, regulations, and policies are executed; preparing a budget; employing assistants for the board; working as a liaison with various divisions of county government; ensuring that county property is properly managed, maintained, and repaired; reporting to the board on the county's affairs and financial condition; informing the board of federal and state laws that affect the board; receiving, investigating, and reporting citizens' complaints to the board; meeting regularly with the board; and performing any administrative duties legally delegated to him by the board. MISS. CODE ANN. § 19-4-7.

Because the road manager and county administrator occupy critical managerial roles in county government, and because their duties strongly influence the public's view of the elected board of

12

supervisors, the board must be assured of the trust and loyalty of the road manager and administrator and must be able to assume the confidentiality, when necessary, of their mutual dealings. These appellees' positions enable them to advance the board's policies, if they act faithfully, or to undermine those policies by overt or covert opposition. Because Gentry's and Cornelius's political activities created strains that could easily disrupt and prevent the effective performance of public services, the government interest must take precedence over those activities. We therefore conclude that even if Brooks voted to discharge Gentry and Cornelius because they campaigned for his political opponent and enemy, they failed to allege a violation of their constitutional rights in this respect.[9]

That Brooks is shielded from First Amendment liability if he fired Cornelius and Gentry solely for their political activities against him does not end this case, however. The appellees also allegedly opposed certain of Brooks's official actions, including his desire to put his girlfriend on the county payroll and his insistence that county resources be used to pave a friend's road on private property. Brooks asserts, without explanation, that the

---

[9]Because the appellees fail to allege a violation of their constitutional rights, we need not address the second prong of the qualified immunity analysis. We note, however, that under Noyola v. Tex. Dep't of Human Res., 846 F.2d 1021 (5th Cir. 1988), Brooks's conduct was not objectively unreasonable because the right Gentry and Cornelius attempt to assert was not clearly established at the time the challenged conduct occurred. See also Gunaca, supra.

<u>Branti</u> exception allowed him to seek to terminate Gentry and Cornelius for speech other than that related to their political activities. This assertion is incorrect. <u>Kinsey</u> places all public employee speech on a spectrum based on analysis of the nature of the speech as well as the employee's position. A position of trust and confidence limits the employee's right to engage in political activity against his superiors, in <u>Kinsey</u> as in this case, but the position "does not immunize public employer action unconnected to and unmotivated by [the] need for political loyalty." <u>Bonds v. Milwaukee County</u>, 207 F.3d 969, 979 (7th Cir. 2000) (relying on <u>Marshall v. Porter County Plan Comm'n</u>, 32 F.3d 1215, 1221 (7th Cir. 1994) (government employer could not terminate a policymaking employee for speech criticizing her employer's abuse of office because the speech did not involve her political or policy viewpoints)). Thus, Gentry's and Cornelius's "speech" concerning Brooks's official actions, rendered in the course of their employment, may have been protected under the First Amendment, rendering retaliation by Brooks possibly unconstitutional. A number of issues must be resolved before judgment can be entered for appellees: whether they indeed engaged in such employment-related speech; whether under the <u>Pickering</u>/<u>Connick</u> test, the speech touched matters of "public concern" and is otherwise constitutionally protected in the workplace; and whether that speech, as opposed to appellees' political activities, motivated

14

their termination.  We note, without deciding, these issues, which are not before us on appeal and remain to be decided by the district court.

## III.  CONCLUSION

As Lowndes County road manager and administrator, Gentry and Cornelius held positions that fall within the <u>Branti</u> exception to First Amendment protection of political association and speech. When they decided to support and campaign for Brooks's political opponent and enemy, they abandoned any First Amendment protection otherwise afforded them against a patronage dismissal.  The district court judgment denying Brooks's motion to dismiss Gentry's and Cornelius's political dismissal claims based on qualified immunity is therefore reversed.

**REVERSED** and **REMANDED.**