FILED
United States Court of Appeals
Tenth Circuit

November 26, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BILL POINDEXTER,

        Plaintiff-Appellant,

v.

THE BOARD OF COUNTY
COMMISSIONERS of the COUNTY
of SEQUOYAH, STATE OF
OKLAHOMA, and MIKE HUFF, in
his individual capacity,

        Defendants-Appellees.

No. 07-7074

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 6:06-CV-00453-FHS)**

---

Rand C. Eddy, Sherri A. Carver, Patrick J. Holman, Eddy Law Firm, P.C.,
Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Jodi S. Casey, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma, for
Defendants-Appellees.

---

Before **McCONNELL**, **EBEL** and **GORSUCH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

In 1999, newly-elected Sequoyah County Commissioner Cleon Harrell appointed Plaintiff-Appellant Bill Poindexter to serve as Road Foreman for his district. After Harrell's retirement and the election of Defendant-Appellee Mike Huff as District 3 Commissioner in 2006, Huff demoted Poindexter and replaced him as Road Foreman with one of Huff's political supporters. This occurred after Poindexter declined to support Huff, briefly ran against Huff for the Commission seat, and then worked for opponents of Huff in the primary and general elections. Mr. Poindexter filed suit in district court, claiming that this demotion violated his First Amendment rights of speech and political association.[1]

The district court granted summary judgment for the defendants on several grounds, including that the Road Foreman job is one for which political loyalty may appropriately be required. *See Branti v. Finkel*, 445 U.S. 507, 518 (1980); *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000). We affirm.

## I.    Background

Mr. Poindexter was originally hired as Road Foreman by County Commissioner Cleon Harrell after his election to that position in 1999. Poindexter was a political supporter of Commissioner Harrell. In 2005, amidst rumors that Commissioner Harrell might resign, Mike Huff began to test the

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

waters. In July, Mr. Huff called Mr. Poindexter and asked him if he wanted to keep his job if Mr. Huff was ultimately elected. If so, Huff suggested that the two get together to "go over some things." In response, Mr. Poindexter expressed his full support for the incumbent Harrell and refused to campaign or speak out against him. Mr. Huff then assured Mr. Poindexter that he was not asking him to oppose Commissioner Harrell, but that if he were elected to the position he wanted Poindexter to continue to serve as Road Foreman. Poindexter responded, "that will work."

After this conversation, "rumor" and "gossip" led Mr. Poindexter to believe that Mr. Huff actually intended to make another man, Ed Watts, his Road Foreman if elected. In October 2005, Commissioner Harrell announced his resignation, and a special election for the position was scheduled in February 2006. Concerned that he would lose his job, Mr. Poindexter ran an advertisement in the local newspaper on November 3, indicating that he intended to run for Commissioner himself. His campaign was short-lived. Mr. Poindexter decided not to run for Commissioner due to various personal problems, though he never made a formal announcement that he was no longer running.

Upon the announcement of Poindexter's candidacy, Mr. Huff called Mr. Poindexter and told him, "I thought you were going to be my foreman." Poindexter responded that he had heard that Ed Watts was going to be Huff's

foreman.  Huff then stated, "well, I talked to him first.  I'll find someone else to help me."  What happened at this point is disputed.  The defendants point to evidence that Mr. Huff asked Mr. Poindexter repeatedly to be his Road Foreman if he was elected, and Mr. Poindexter refused.  The plaintiff denies that he told Huff he did not want to be retained in the position if Huff were elected.

A few weeks later, on November 14, Mr. Huff announced his candidacy for County Commissioner, stating as part of that announcement that Ed Watts would be his Road Foreman.  Watts endorsed Huff's candidacy and gave him political support.  Mr. Huff won the election.  The day he was sworn into office, he hired Mr. Watts as his Road Foreman.  That same day, he told Mr. Poindexter that he would give him a job paying $10,000 less than his old Road Foreman position.  Commissioner Huff gave Mr. Poindexter two weeks of paid vacation to decide whether to take the job, and he ultimately declined the offer.

## II.    Analysis

The Supreme Court has held that many public employees have the right, with certain limitations, to engage in political activities opposed to their elected superiors without penalty to their jobs.  *See Elrod v. Burns*, 427 U.S. 347, 356 (1976).  Recognizing, however, that democratic governance requires that the voters be able to influence the conduct and the selection of policy-making and politically significant officials–to "throw the rascals out"–the Court has held that

political loyalty "is an appropriate requirement for the effective performance" of some government positions. *Branti v. Finkel*, 445 U.S. 507, 518 (1980). The two-part test laid out in *Elrod* and further refined in *Branti* determines whether a government employee's demotion violates his right to free political association. To survive summary judgment, an employee needs to show a "genuine dispute of fact that (1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors" in his demotion, and (2) his position did not require political allegiance. *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000).

The parties dispute whether the evidence establishes that Commissioner Huff's decision to demote Mr. Poindexter and hire Mr. Watts was motivated by Mr. Poindexter's perceived political affiliation.[2] We need not resolve that dispute, because, as the district court held, the Road Foreman position appropriately requires political loyalty and Commissioner Huff was therefore entitled to give the job to a political supporter. To defend against a First Amendment claim on this ground, a public employer has the burden of proving that political loyalty is an "appropriate requirement for the effective performance

---

[2]The district court granted summary judgment in favor of the defendants on the ground that Mr. Poindexter failed to offer evidence from which a reasonable jury could conclude that his political speech or association was a motivating factor in his demotion. Because we affirm summary judgment on the political association claim on other grounds, there is no need for us to consider that holding. We will discuss whether Mr. Poindexter's speech (specifically, his statement to Mr. Huff in July 2005 that he was supporting Commissioner Harrell) was a motivating factor in his dismissal below.

of the public office involved." *Barker*, 215 F.3d at 1138 (quoting *Branti*, 455 U.S. at 518). The question is not whether any particular political superior (in this case, Commissioner Huff) actually takes political loyalty into account, but whether the nature of the position would appropriately permit him to do so. This Court has held that this determination is a question of fact. *Snyder v. City of Moab*, 354 F.3d 1185 (10th Cir. 2003) (citing *Barker*, 215 F.3d at 1137); *see also McCollum v. Stahl*, 579 F.2d 869, 873 (4th Cir. 1978) (holding that the nature of the relationship between the sheriff and deputy was a question of fact to be determined by a jury), *cert. denied*, 440 U.S. 912 (1979). In determining whether a position appropriately requires political allegiance, we focus on the inherent powers of the position and the actual duties performed. *Jantzen v. Hawkins*, 188 F.3d 1247, 1253 (10th Cir. 1999). Thus, if a significant factual dispute regarding the employee's job duties exists, summary judgment is inappropriate. Of course, if the job description and duties performed are undisputed, then the district court may resolve the issue as a matter of law.

The district court found that the Road Foreman's powers and duties included supervising the district's employees as well as supervising inmates working within the district; addressing all safety issues and running safety training; delegating and supervising project assignments; terminating employees for cause; working as County Commissioner if he is absent (but still under the

-6-

other two Commissioners' supervision); spending county money to purchase materials and supplies; and acting as an ambassador to the community on behalf of the Commissioner. Dist. Ct. Or. 1-2. Commissioner Harrell testified in his deposition that the Foreman "acts as pretty much the assistant commissioner," doing whatever the Commissioner would do when the Commissioner is absent. R. 214. He further testified that it was "vital to [him] that [his] foreman be someone that could enforce and would enforce [his] policies." R. 107. Commissioner Huff testified to similar effect. Mr. Poindexter himself testified that he was "responsible for everything in District 3 and that is 24 hours a day, seven days a week." R. 244. He stated that he was "responsible for kind of setting some guidelines as to how [the road crew members] do their work and how projects are completed." R. 245. He said that he would make modest expenditures on his own authority—$600 was the example he used—but that before making "big" expenditures—$3000 was the example—he would talk with the Commissioner. R. 265-66. When asked if he had responsibilities relating to citizens of the county, Mr. Poindexter responded, "You're responsible for being an ambassador for your commissioner," which includes answering what seems like "10,000 calls a year." R. 245. Mr. Poindexter also affirmed that "[i]f the commissioner was unavailable, whether it was [because] he was off, or he was in meetings, or out of town for something," the Road Foreman would "step into somewhat his shoes

with respect to running the county." R. 60-61. It is undisputed that the Road Foreman reports directly to the Commissioner and there is no intermediary supervisory authority over him.

We believe that, on this record, a reasonable jury would be forced to conclude that the office of Road Foreman has a significant political dimension and sufficient discretionary authority that the County Commissioner, for whom the Foreman works, may properly take political loyalty into account. Courts in other parts of the country have reached similar conclusions, though the precise job positions are vested with different responsibilities in different jurisdictions, making firm cross-jurisdictional generalizations impossible. In *Gentry v. Lowndes County*, 337 F.3d 481 (5th Cir. 2003), the Fifth Circuit found that political allegiance is an appropriate requirement of a county Road Manager under Mississippi law. In Mississippi, the Road Manager runs the county road department, supervises bridge and road construction, helps prepare a budget, purchases and leases equipment, hires assistants and employees, and carries out the general policies of the county board of supervisors. *Id.* at 487. Similarly, in *Hoard v. Sizemore*, 198 F.3d 205 (6th Cir. 1999), the Sixth Circuit found that political allegiance is an appropriate requirement of the position of "County Road Department Foreman and Garbage Coordinator." This position involved maintaining all of the roads in the county, supervising the county road and

garbage departments, reporting directly to the county-judge executive, serving as a liaison to the public regarding road problems, and answering and addressing complaints from the public. *Id.* at 213-14; *see also Langley v. Hot Spring County*, 393 F.3d 814, 818 (8th Cir. 2005) (holding that political allegiance is an appropriate requirement of a road foreman where the road foreman reports directly to the chief executive and has significant contact with the public). We believe that the positions involved in these cases are sufficiently similar to that of district Road Foreman in Oklahoma to lend support to our conclusion in this case.

Although not cited by either party, the best case for the plaintiff is another Fifth Circuit decision, *Wiggins v. Lowndes County*, 363 F.3d 387 (5th Cir. 2004), which held that the position of district "Road Foreman" in Mississippi, unlike that of county "Road Manager," is sufficiently nondiscretionary that it is not appropriate to require political allegiance. In Mississippi, Road Foremen implement the projects determined by the Road Manager, supervise and assign work to the road crew, inspect equipment, maintain records and inventories, inspect roads and bridges, advise the Road Manager of repairs, and perform other duties assigned by the Road Manager. *Id.* at 390. The court held that these duties, unlike those of Road Managers, do not involve policymaking or require confidentiality. *Id.* at 391. This decision might seem especially pertinent to this case because Mr. Poindexter's position was that of district Road Foreman, and not

that of county Road Manager. On reflection, however, we think the *Wiggins* case is distinguishable. In Oklahoma at the time of the events in this case, there were no county-wide Road Managers; the district-level Road Foremen were the highest officials in the road departments, subject only to the supervision and control of the Commissioners. In most respects, including its discretionary authority over supervising employees, determining work priorities, making spending decisions, and serving as the communications link between constituents and the Commissioner, the position of district Road Foreman in Oklahoma more closely resembles that of Road Manager than Road Foreman under Mississippi law.

Mr. Poindexter cites to the district court's unpublished decision in *Lunsford v. Board of County Commissioners*, which refused to hold as a matter of law that the Road Foreman position in Oklahoma requires political allegiance. 2006 U.S. Dist. LEXIS 67119, at *12-*13 (LexisNexis Sept. 18, 2006). With all respect to the district judge in that case, who sits in the state and is familiar with its practices, we do not agree with the court's reasoning. According to the court, political loyalty is, as a matter of law, an inappropriate requirement because there is "no political or partisan way to fix roads." *Lunsford*, 2006 U.S. Dist. LEXIS 67119, at *13. We think this understates the role of road construction and maintenance in rural counties. The decisions involved in road construction and repairs are often of utmost importance to constituents and many times are

motivated by political goals. As the Fifth Circuit observed in *Gentry*, 337 F.3d at 487, "Roads in rural Mississippi are the political lifeblood of elected officials, and the public's view of the elected supervisors depends greatly on the road manager's performance and supervision of employees." We believe the record in this case unequivocally shows that the same is true in Sequoyah County, Oklahoma.

Mr. Poindexter maintains that summary judgment was improper because the following disputed issues of material fact remained: (1) whether Mr. Poindexter was an "ambassador" for the Commissioner; (2) whether the road foreman performs the duties of the Commissioner if he is absent; and (3) whether the road foreman had to consult with the Commissioner before making large expenditures. We do not agree. Mr. Poindexter himself, in his deposition, described the position of Road Foreman as "ambassador for your commissioner," and explained that the Foreman would, in the Commissioner's absence, "step into somewhat his shoes with respect to running the county." Mr. Poindexter's statement may not imply that the Road Foreman performs *all* of the duties of the Commissioner when he is absent, but that is not necessary to establish that the position has a significant political dimension.

The dissent makes much of the fact that Commissioner Huff testified in his deposition that he did not in fact take Mr. Poindexter's political loyalty into

account when he demoted him and hired Mr. Watts to take his place. See R. 305 ("I didn't care if [Poindexter] run [sic] for county commissioner. He could run for it and if I won the election, he could still be the road foreman."); *id.* at 307 (when Huff was asked whether he considered the political support of persons he might hire as Road Foreman, he responded, "No, I didn't mind if they supported somebody else, no sir.") (both quoted at Diss. Op. 7). These statements, if believed, mean only that Huff himself did not choose to hire on the basis of political loyalty. The statements have no bearing on whether, objectively speaking, the Road Foreman position is one for which a Commissioner could appropriately insist on political loyalty. Politicians are always free to appoint (or claim to appoint) government officials on the basis of merit or experience rather than politics. Huff's remarks are like a President claiming his choice of a particular cabinet secretary was "nonpartisan." A high-minded sentiment, to be sure, but irrelevant to the constitutional character of the office.

We recognize that there is evidence that Mr. Poindexter's discretion as Road Foreman was limited in some ways. The Road Foreman could only fire employees for "just cause," R. 216, and the only employee whom Mr. Poindexter dismissed was ultimately rehired several weeks later by Commissioner Harrell. R. 220. Mr. Poindexter testified in his deposition that he "didn't have the authority . . . to make great big decisions," including making large expenditures, without

-12-

consulting the Commissioner. R. 264. Moreover, his authority to commit county funds was constrained by a budget. R. 218-19. Finally, two Commissioners from other districts supervised Mr. Poindexter in the two-and-a-half month period after Commissioner Harrell resigned and before Mr. Huff was elected. R. 266. Mr. Poindexter was not acting as Commissioner during this time, and did not attend County Commission meetings in Commissioner Harrell's stead. R. 479-81.

Viewing this evidence in the light most favorable to the plaintiff, as we must, we still do not think it is sufficient to permit a reasonable jury to conclude that the Road Foreman position was so lacking in discretionary authority as to make political allegiance an inappropriate requirement. That Mr. Poindexter's employment decisions were subject to review by Commissioner Harrell does not mean that the Road Foreman position lacked discretionary authority, any more than the fact that the President can override a cabinet secretary's decisions renders the latter a ministerial office. And it is not atypical that the authority of an official, even an important one, to expend public money is capped, or constrained by a budget. Nor is it significant that Mr. Poindexter was subject to the supervision of other commissioners after Mr. Harrell's departure from office; no one contends that Road Foremen are independent agents not subject to Commissioner supervision. In sum, the undisputed evidence, including Mr. Poindexter's own testimony, shows that the position of Road Foreman involves

substantial (even if not unlimited) discretion and has a significant political dimension as a communications link between constituents and their Commissioner.

Mr. Poindexter's briefs in this Court point to almost no evidence contrary to the conclusion that his position had a significant political dimension. To challenge the claim that Poindexter had authority to commit county funds, the brief cites a span of three pages in the record, which come from Commissioner Harrell's deposition testimony. Aplt. Rep. Br. 18. In these pages, Harrell explained that, as a "requesting officer," the Road Foreman had authority to "commit county funds" to purchase materials, within the limits of a budget. R. 217-19. Mr. Poindexter himself testified elsewhere that he could spend county funds on his own authority, but that for a "big" expenditure (on the order of $3000) he would consult with the Commissioner first. R. 264-65. *See also* R. 265 (explaining that "I could have [spent the larger sum without contacting a commissioner], but I did not because I wanted to be on the same page.").

To challenge the claim that Poindexter had authority to fire road crew employees, the reply brief cites three pages in the record. Aplt. Rep. Br. 17. Two of those pages are from Commissioner Harrell's testimony. On the first of these pages, Harrell testified that the Road Foreman had authority to fire employees, but only for just cause, and that Mr. Poindexter fired only one employee, for

-14-

disobeying orders. R. 216-17. On the second cited page, Harrell stated that some "two, three, four weeks" after Poindexter fired this employee, Harrell "brought him back." R. 220. He does not explain why, or state that the discharge was improper or invalid. The third page is the introduction to the county employee handbook, which includes the statement, "Each employee is responsible to the elected official who hires and/or appoints that employee." R. 360.

The fact that a government official's authority to spend public funds is capped, or limited by a budget, or that his employment decisions may be overruled by a higher-ranking elected official, does not render his position nondiscretionary or ministerial. Appellant's briefs do not question the fact that the Road Foreman regularly communicates with the public on behalf of the Commissioner, which is the most important single fact in support of the conclusion that the job has a component of political loyalty.

The plaintiff also raised, in the alternative, a free speech claim based on the theory that his demotion was in retaliation for Mr. Poindexter's July 2005 averment of loyalty to then-Commissioner Harrell. We agree with the district court that there was insufficient evidence to go to the jury on this claim. At that time, Mr. Huff had not decided to run against Commissioner Harrell. Indeed, he told Poindexter that he probably would not run if Harrell ran for re-election. R. 254. In the conversation, Huff gave no indication whatsoever that he was

offended by Poindexter's statement of support for the incumbent.  In fact, he offered Mr. Poindexter the job even after that statement.  R. 251.  In response, Mr. Poindexter agreed to serve if Huff won election as Commissioner.  The conversation thus does not reveal hostility on either man's part toward the other.  Moreover, at the time of the conversation, Mr. Huff had little or no reason to be offended even if Mr. Poindexter had declined.  Mr. Huff did not run for Commissioner until months later, when Harrell had resigned and there was a special election.  The evidence is undisputed that, as of July 2005, Mr. Huff was reluctant to challenge Mr. Harrell and did not run in a race against him; in other words, they were not political opponents.  There is no evidence that Poindexter's expression of loyalty to Harrell in July 2005 offended Huff or was to his political disadvantage at that time, and therefore no reason to infer that this was a motivating factor in the subsequent demotion.

Because we have affirmed the district court's grant of summary judgment in favor of the defendants on both the political association claim and the free speech claim, there is no need to address the Sequoyah County Board of Commissioners' contention that it is immune from suit under *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 694-95 (1978).

-16-

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.

07-7074, *Bill Poindexter v. The Board of County Commissioners of the County of Sequoyah, State of Oklahoma, and Mike Huff*

**EBEL**, J., dissenting.


The majority opinion affirms the district court's grant of summary judgment for defendants on the association claim, finding that the Road Foreman position in Sequoyah County, Oklahoma, is politically sensitive and County Commissioners may, therefore, demand political loyalty from their Road Foremen. The majority opinion also affirms summary judgment for defendants on the speech claim, finding that there was "no evidence that Poindexter's expression of loyalty to Harrell in July 2005 offended Huff or was to his political disadvantage at that time, and therefore no reason to infer that this was a motivating factor in the subsequent demotion." (Maj. Op. 16.) I disagree with the majority's conclusions on both these claims, and write separately to explain my position. Because I find that the position of Road Foreman may not require political loyalty and that this issue should be submitted to the jury, I address two issues the majority was able to avoid: (1) whether plaintiff has adequately alleged facts that could support a finding that he was fired because of his protected association; and (2) whether Huff is entitled to qualified immunity.

## I. Political Association

To determine whether a public employee was wrongfully demoted for his political affiliations, a court must address two issues: (1) whether the employee's political affiliations caused his demotion; and (2) whether the employee held a position which legitimately required his political allegiance. See Barker v. City of Del City, 215 F.3d 1134, 1137 (10th Cir. 2000) (stating that "public employees receive First Amendment protection from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance") (quoting Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1451 (10th Cir. 1997)). The Supreme Court's decisions in Elrod v. Burns, 427 U.S. 347, 372 (1976) and Branti v. Finkel, 445 U.S. 507, 518 (1980) provide that an employer may fire his employees because of their political affiliation if "party affiliation is an appropriate requirement for the effective performance of the public office involved." Dickeson v. Quarberg, 844 F.2d 1435, 1441 (10th Cir. 1988) (quoting Branti, 445 U.S. at 518).

### A. Causation

When deciding a motion for summary judgment, we "view the evidence and draw any inferences in a light most favorable to the nonmovant." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1387 (10th Cir. 1997) (citing

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Viewing the evidence in the light most favorable to the plaintiff, I conclude that Poindexter presented enough evidence that he was demoted because of his political affiliation to overcome a motion for summary judgment.

The plaintiff has alleged both contested and uncontested facts in support of his claim that he was demoted because of his political affiliation. The uncontested facts are that: (1) until Cleon Harrell dropped out of the race, the plaintiff supported Cleon Harrell against Mike Huff in the election for County Commissioner; (2) the defendant knew that plaintiff was supporting his rival; and (3) as soon as defendant became the Commissioner, he demoted the plaintiff.

The parties disagree over the precise timing of Huff's decision to hire Watts as his Road Foreman.  Huff claims that, during his November 2005 conversation with Poindexter, Poindexter stated that he no longer wanted to be Road Foreman.  Huff claims that he decided to hire Watts only after Poindexter informed him that he no longer wanted the job.  Poindexter contests Huff's version of their conversation, and claims Huff informed him during their conversation in November 2005 that he had already decided to hire Watts.

Poindexter's version of his November 2005 conversation with Huff supports his claim that he was fired in retaliation for his political association in two ways.  First, if the jury finds that Huff had decided to hire Watts as his Road

Foreman sometime before his November 2005 conversation with Poindexter, the proximity between Poindexter's declaration of support for Harrell and Huff's decision to hire Watts could support an inference that Poindexter's affiliation with Harrell caused his demotion.[1]  See Maestas v. Segura, 416 F.3d 1182, 1189 (10th Cir. 2005) ("An employer's knowledge of the protected speech, together with close temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment.").[2]

---

[1]The parties agree, in their briefs, that Poindexter announced his own candidacy for County Commissioner before his November 2005 conversation with Huff.  Under normal circumstances, this might defeat an inference of causation based on the proximity of Poindexter's earlier statement in support of Harrell and Huff's decision to hire Watts.  See Maestas, 416 F.3d at 1189 (10th Cir. 2005) (stating that "evidence of intervening events tend to undermine any inference of retaliatory motive and weaken[s] the causal link" between the political speech and plaintiff's subsequent transfer) (citing Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir. 1998)).  And Huff would not have violated Poindexter's constitutional rights if he demoted Poindexter for running against him in the race for County Commissioner.  See Jantzen v. Hawkins, 188 F.3d 1247, 1252 (10th Cir. 1999) (rejecting plaintiff's claim of wrongful discharge in violation of his right to association under the First Amendment in part because plaintiff's claim was based on his boss's displeasure with his own candidacy.  "The right to political affiliation does not encompass the mere right to affiliate with oneself."). In this case, however, the defendant explicitly stated that he had not demoted the plaintiff because of his rival candidacy for County Commissioner.  Construing all facts in the light most favorable to the plaintiff, I believe we must conclude that this intervening cause did not create a new reason for the defendant to demote the plaintiff, and a jury could still find that the plaintiff was demoted because of his constitutionally protected affiliation with, and speech for, Harrell.

[2]The lapse of time between the July 2005 conversation where Poindexter indicated his support for Harrell and the November 2005 conversation where Poindexter claims Huff indicated he would hire Watts is greater than the time

(continued...)

-4-

Second, if the jury believes Poindexter's version of his November 2005 conversation with Huff, the jury could also find that Huff fabricated his version of their conversation to provide a pretext for Poindexter's demotion.  This (entirely permissible) finding would provide substantial support to Poindexter's claim.  See Ware v. Unified School Dist. No. 492, Butler County, State of Kansas, 881 F.2d 906, 911 (10th Cir. 1989) (modified in part, 902 F.2d 815 (10th Cir. 1990)) ("A plaintiff may create a reasonable inference of improper motivation by presenting evidence tending to show that the reasons proffered for the adverse action are without factual support.").  Thus, the plaintiff has presented more than enough evidence that his constitutionally protected affiliation caused his demotion to withstand a motion for summary judgment.

---

[2](...continued)
lapse that our cases have previously found as probative of causation.  See, e.g., Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 595-96 (10th Cir. 1994) (overruled on other grounds by Ellis v. Univ. of Kansas Med. Ctr., 163 F.3d 1186 (10th Cir.1998)) (holding that a claim for retaliatory discharge could survive summary judgment in large part because of plaintiff's allegation that he was fired just one and half months after defendants were made aware of the defendant's critical, but constitutionally protected, speech).  The proximity is, nonetheless, probative in this case for two reasons.  First, Huff lacked the authority to immediately demote Poindexter, but he demoted Poindexter as soon as he was given that authority.  Second, if the jury believes Poindexter's version of the November 2005 conversation, the jury could also conclude that Huff decided to hire Watts sometime significantly before that conversation.  In that case, the proximity between Poindexter's statement in support of Harrell and Huff's decision to hire Watts is close enough that the jury may infer a causal connection between those two events.

-5-

B. Political Loyalty of the Road Foreman

As the majority concede, a determination of "[w]hether political association is an appropriate requirement for a position has been held to be a question of fact. However that question may be resolved as a matter of law <u>if the facts as to the nature of the duties of the position are undisputed</u>." <u>Snyder v. City of Moab</u>, 354 F.3d 1179, 1185 (10th Cir. 2003) (affirming jury's verdict for defendant because there was some evidence that plaintiff's position required political loyalty) (emphasis added). Critically, the nature of the duties of the Road Foreman position in this case are contested, and so the jury should decide whether the effective implementation of the Road Foreman's responsibilities necessitated his political loyalty to the Commissioner. It is beyond our competence as judges to determine whether the Road Foreman position requires political loyalty.[3]

As the defendant in this case, Huff "must bear the burden of proof on the issue whether [political] affiliation . . . was an appropriate requirement for the effective performance of the public office involved." <u>Dickeson</u>, 844 F.2d at 1442; <u>see also</u> <u>Branti</u>, 445 U.S. at 518 (stating that when determining whether political affiliation is an appropriate basis for demotion, "the question is whether

---

[3]I also find it persuasive that a district judge addressing a similar claim <u>in Oklahoma</u> concluded that "there [wa]s a genuine issue of material fact as to whether [the Road Foreman position] required political allegiance." <u>Lunsford v. Board of County Comm'rs of County of Rogers</u>, 2006 WL 2679578 at *4 (N.D. Okla. 2006).

the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved") (emphasis added). In this case, however, the most important evidence supporting the plaintiff's position that the Road Foreman does not need to be politically loyal is Huff's own insistence that he did not care if Poindexter supported a different candidate or ran against him in the elections. [R. at 39, 305-05] Huff stated at his deposition, "I didn't care if [Poindexter] run [sic] for county commissioner. He could run for it and if I won the election, he could still be the road foreman." [R. at 305] Similarly, Huff was asked, "When you were thinking about who you were going to hire as your road foreman, did you consider their political affiliation or association . . . ?" Huff responded, "No, I didn't mind if they supported somebody else, no sir." [R. at 307] These statements strongly suggest that Huff did not think the job necessitated political loyalty, and Huff is in a far better position than the members of this court to evaluate the necessity of the Road Foreman's political allegiance to the County Commissioner.[4]

The majority concludes that based on the record in this case, "a reasonable jury would be forced to conclude that the office of Road Foreman has a

[4]Huff's description of the nature of the Road Foreman position is particularly significant because he may have expected different things from his Road Foreman than had prior commissioners. See Hoard v. Sizemore, 198 F.3d 205, 213 (6th Cir. 1999) (noting that, in determining whether a position requires political allegiance, it is important to inquire into "how the new office holder envisions the position").

-7-

significant political dimension." (Maj. Op. at 8.) I disagree with the majority's assessment of the record and find that material questions of fact remain regarding whether this position legitimately necessitated political allegiance. The strongest evidence supporting Poindexter's position is Huff's insistence that based on his understanding of the nature of the Road Foreman position, political allegiance was not necessary. However, other evidence also supports Poindexter's argument that factual questions remain. For example, the majority rejects Poindexter's assertion that material questions of fact remain with regards to "whether the road foreman performs the duties of the Commissioner if he is absent." (Maj. Op. at 11.) For that conclusion, the majority relies heavily on Poindexter's affirmation of the defense counsel's statement that Poindexter would "step into somewhat [the commissioner's] shoes with respect to running the county" when the commissioner was absent. (See Maj. Op. at 12.) Unlike the majority, however, I find that Poindexter's affirmation of the defense counsel's statement is inadequate to dispose of this factual issue. First, Poindexter never explained what stepping "somewhat into [the commissioner's] shoes" entailed. [R. at 60-61 (emphasis added)] The commissioner was responsible for a wide range of highly sensitive political matters.[5] With no further elaboration from Poindexter, or other evidence

_____

[5]The Commissioner's job included, among other things, approving payroll, "selling or purchasing public land or buildings for the county," making "general financial plans for the county," organizing "solid waste management," and

(continued...)

-8-

suggesting that Poindexter was ever involved in anything beyond issues related to road repair and maintenance, his affirmation of defense counsel's statement that he "stepped somewhat into [the commissioner's] shoes" is far too ambiguous to support the majority's conclusion that no disputed issue of material fact remained on this issue. Second, other evidence in the record supports a far narrower view of Poindexter's responsibilities in Harrell's absence. For example, former Commissioner Harrell submitted an affidavit supporting Poindexter's opposition to the defendants' motion for summary judgment in which he stated, "[i]n my absence, I did not believe Mr. Poindexter was empowered or otherwise authorized to perform my duties as elected Commissioner for District 3, such as setting policy, attending Board meetings, entering into contracts on behalf of the County, hiring, or voting." [R. at 479-80] Similarly, in a different portion of his affidavit, Poindexter testified that the other two County Commissioners supervised his work after Harrell stepped down, and the only difference in his job was that "instead of having one boss, [he] had two bosses." [R. at 136] These differing and incomplete factual accounts are insufficient to establish the nature of the Road Foreman position as a matter of law, and highlight the reasons that this inquiry should remain the sole province of the jury.

---

[5](...continued)
serving as a member of "the governing body of the courthouse." [R. at 314] I know of no evidence suggesting that Poindexter was ever involved in any of these matters.

## II. Speech Claim

In determining whether an employee was wrongfully demoted because of his political speech, this court applies the five-prong <u>Garcetti</u>/<u>Pickering</u> balancing test. <u>See</u> <u>Brammer-Hoelter v. Twin Peaks Charter Academy</u>, 492 F.3d 1192, 1202-03 (10th Cir. 2007) ("After the Supreme Court's recent decision in *Garcetti* [*v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006)], it is apparent that the '*Pickering*' analysis of freedom of speech retaliation claims is a five step inquiry which we now refer to as the '*Garcetti/Pickering*' analysis.") (internal citations and quotations omitted). However, the district court in this case applied the older, four-prong <u>Pickering</u> test. (<u>See</u> Ct. Order at 5.) The main substantive change engendered by the new test is a preliminary determination of whether the employee spoke "pursuant to his official duties," <u>Garcetti</u>, 547 U.S. at 421-22, which no one alleges was the case here. Therefore, for ease of review, I will refer to the four-prong <u>Pickering</u> test. Under the four-prong <u>Pickering</u> test,

> First, we must determine whether the employee's speech involves a matter of public concern. If so, we then balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

-10-

Finn v. New Mexico, 249 F.3d 1241, 1247 (10th Cir. 2001) (internal citations and quotations omitted).

The district court in this case determined that Poindexter had adequately demonstrated the first two prongs of the Pickering test: (1) that Poindexter's speech in support of Harrell involved a matter of public concern; and (2) that Poindexter's interest in the speech outweighed Huff's interest in "promoting the efficiency of the public services [he] performs through [his] employees." Id. I agree with the district court's decision on these prongs, and would only note one additional factor strongly supporting the district court's determination on the second prong.[6] In Jantzen, 188 F.3d at 1257-58, we held that a deputy sheriff's interest in stating that he would run against his boss for sheriff was outweighed by the sheriff's need to prevent disruption in effective law enforcement. We relied heavily on the sheriff's testimony that, in his experience, having two people running for office would disrupt them from properly doing their job, and noted that "we will defer to a public employer's reasonable predictions of disruptions." Id. at 1257 (quoting Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir. 1998)); see also Worrell v. Henry, 219 F.3d 1197, 1208-09 (10th Cir. 2000)

_____

[6]Unlike the determination of the political sensitivity of a job, which will normally raise factual questions appropriate for a jury, the first two prongs of the Pickering analysis can generally be decided by the judge. See Clinger v. New Mexico Highlands Univ., Bd. of Regents, 215 F.3d 1162, 1166 (10th Cir. 2000) (stating that the first two prongs of the Pickering analysis raise questions that "are legal in nature and must be resolved by the court").

-11-

(relying on employer's prediction that plaintiff's prospective co-workers would not cooperate with him because of his constitutionally protected speech, and holding that the employer's interest in effective law enforcement therefore outweighed the plaintiff's interest in his free speech). If we defer to an employer's arguably self-serving prediction of disruption, we should certainly defer to his prediction that there would <u>not</u> be any disruption. In this case, Huff stated that it would not matter to him if his Road Foreman campaigned for a different candidate. We should defer to Huff's statements in this regard, and conclude that any potential disruption arising out of Poindexter's support for Harrell would be too minimal to justify an attempt to silence that support.

The district court also determined, and the majority agreed, that Poindexter failed to provide sufficient evidence on the third prong of the <u>Pickering</u> test addressing causation. The majority found that there was "no evidence that Poindexter's expression of loyalty to Harrell in July 2005 offended Huff or was to his political disadvantage at that time, and therefore no reason to infer that this was a motivating factor in the subsequent demotion." (Maj. Op. at 16.) However, as I've discussed above, the timing of Huff's decision to demote Poindexter, his knowledge of Poindexter's support for Harrell, and the possibility that the jury could conclude that he lied about his true motives for demoting Poindexter provide enough evidence of causation that the issue of causation should be

-12-

decided by a jury.

Finally, the fourth prong of the <u>Pickering</u> test, whether Huff can point to evidence that he would have demoted Poindexter even if Poindexter had not stated his support for Harrell, should be decided by the jury.

### III.  Qualified Immunity

"Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if she has, (2) whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right."  <u>Keylon v. City of Albuquerque</u>, 535 F.3d 1210, 1218 (10th Cir. 2008) (internal citations and quotations omitted).

The district court held that Huff was entitled to qualified immunity because Poindexter had failed to "establish a First Amendment violation."  (Ct. Order at 12.)  I think the district court erred in its determination that, as a matter of law, Huff did not violate Poindexter's First Amendment rights.  I must, therefore, address the second prong of the qualified immunity analysis and determine if the rights Poindexter alleges were violated were "clearly established" at the time of the alleged violation.  I conclude that Poindexter has adequately alleged

-13-

violations of clearly established laws, so Huff is not entitled to qualified immunity.

Political Affiliation Claim

The right not to be demoted from a position that does not require political allegiance is clearly established in both Supreme Court and Tenth Circuit caselaw.  See Gann v. Cline, 519 F.3d 1090, 1095 (10th Cir. 2008) ("[C]onditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so.") (quoting Rutan v. Republican Party of Ill., 497 U.S. 62, 78 (1990)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Seamons v. Snow, 84 F.3d 1226, 1238 (10th Cir. 1996). However, "the plaintiff need not show that the specific action at issue has previously been held unlawful, he need only show that the alleged unlawfulness was apparent in light of preexisting law."  Id. (internal citations and quotations omitted).

This circuit has stated that the relevant test for qualified immunity is

-14-

whether "the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right." Casey v. West Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007) (emphasis added); see also Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006) ("The law is clearly established if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right."). To determine what a reasonable person in Huff's shoes would have thought about the legality of his decision to demote Poindexter, we may not inquire into Huff's knowledge of the law. See Halperin v. Kissinger, 807 F.2d 180, 186 (D.C. Cir. 1986). We may, however, inquire into what someone in Huff's position would reasonably understand the facts to be regarding the nature of Poindexter's position. Cf. id. (noting that the Supreme Court precluded inquiries into a defendant's knowledge of the law, but did not "eliminate inquiry into intent unrelated to knowledge of the law"). In this case, Huff's testimony indicates that someone in his position would understand the nature of the Road Foreman position well enough to know whether the job required political loyalty. See Jantzen, 188 F.3d at 1259 (declining defendant's request for qualified immunity and relying, "most importantly, [on] the fact the Defendant Hawkins himself knew and had empirical evidence that the lack of political loyalty by [the plaintiffs] did not interfere with the effective performance

-15-

of [plaintiffs'] jobs").  And, if the jury chooses to believe the defendant Huff's own testimony on this matter, they could conclude that it was clearly established that the job of Road Foreman was not a politically sensitive position.  Until the jury determines that factual question, therefore, Huff is not entitled to qualified immunity as a matter of summary judgment.  See Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003) ("The objective legal reasonableness of the officer's actions is a legal question. But where the historical facts material to [that] issue are in dispute [there] . . . [is] an issue for the jury.") (internal citations and quotations omitted).

Speech Claim

Given the heightened protection supplied to employee speech, a court should be especially reluctant to grant qualified immunity for a demotion in retaliation for constitutionally protected speech.  See Aiken v. Rio Arriba Bd. of County Comm'rs, 134 F.Supp.2d 1216, 1223-24 (D.N.M. 2000) (granting an employer qualified immunity for firing an employee based on his political speech because, at the time of the firing, the Tenth Circuit had not yet made it clear that the stricter Pickering analysis applied to cases involving an employee's political speech, and under the looser standards afforded in the context of political affiliation claims, the firing would have been justified); see also Bass v. Richards,

308 F.3d 1081, 1089 (10th Cir. 2002) ("The citizenry's ability to make known their assessment of a candidate's qualifications for public office is integral to the operation of the system of government established by our Constitution. Accordingly, [t]he First Amendment affords the broadest protection to such political expression.") (internal citations and quotations omitted).

Qualified immunity is not appropriate in this case under the speech claim because, applying the four-prong Pickering test, there is substantial evidence that Huff's decision to fire Poindexter violated clearly established law. First, Poindexter has asserted that he was fired in retaliation for his statements in support of incumbent Commissioner Harrell. Statements in support of political candidates are firmly within the sphere of matters of "public concern." See Bass, 308 F.3d at 1089. Second, the district court found that Poindexter's interest in his speech in support of Harrell outweighed any interest Huff may have had in preventing that speech. Huff does not contest that finding on appeal. Third, as discussed above, Poindexter has alleged more than enough facts to support his claim that his speech caused his demotion. Finally, Huff has not established that he would have demoted Poindexter even if Poindexter had not stated his support for Harrell. Therefore, Huff is not entitled to qualified immunity on the speech claim.

## Conclusion

Based on the foregoing, I respectfully dissent and find that this court should REVERSE the district court's grant of summary judgment on both the political association and free speech claims, and REVERSE the district court's grant of qualified immunity to Defendant Huff.  The court should REMAND the case for further proceedings in light of the forgoing comments.